**Linda M. USHER, Plaintiff,**

v.

**LAKEWOOD ENGINEERING & MFG. CO., Defendant.**

No. 93 C 3279.

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 10, 1994.

L. Steven Platt, Arnold & Kadjan, Chicago, IL, for plaintiff.

Amy E. Sherman, Franczek, Sullivan, Mann, Crement, Hein & Relias, P.C., Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Linda Usher ("Usher") has moved for issuance of a protective order against one aspect of the discovery proposed to be instituted by Lakewood Engineering & Mfg. Co. ("Lakewood") in this employment discrimination case brought by Usher against her ex-employer Lakewood. More precisely, Lakewood seeks to conduct a battery of psychological tests as part of the input for its designated experts (a psychiatrist and associated psychologist), to assist in preparing the psychiatrist for his testimony at trial.[1]

Initially Lakewood proposed that the all-day testing procedure would comprise a half-dozen psychological tests:

    1. an MMPI–II (Minnesota Multiphasic Personality Inventory) exam consisting of 567 questions;

    2. the Rorschach Test;

    3. the T.A.T. (Thematic Apperception Test);

    4. the Shipley Institute for Living Scale (IQ estimate);

    5. the Sixteen Personality Factors Inventory; and

    6. the MCMI–II or MCMI–III (both popularly known as the Millon test) consisting of 175 questions.

In response to the objections that were then interposed by Usher's counsel (objections based partly, but not at all entirely, on such factors as the inapplicability of the Millon test for the purposes at issue here and the appreciable rate of error in that test), Lakewood retreated by abandoning the Millon test. What therefore remain in dispute are the other five tests.

■ There is no question that Usher has put her mental state into controversy in this action, so as to trigger the potential use by Lakewood of the Fed.R.Civ.P. 35(a) opportunity to conduct a mental examination. Not only has Usher claimed intangible harms of that type as part of her damages from Lakewood's alleged sex-discriminatory conduct, but she herself has seen clinical psychologist Larry Heinrich during four one-hour clinical sessions for depressive episodes (in the first instance a few months after she was fired and had filed her sex discrimination charge against Lakewood, and then again in April of this year when she assertedly experienced renewed depression based on factors stemming from this litigation). Under those circumstances, what was taught three decades ago in *Schlagenhauf v. Holder,* 379 U.S. 104, 118–19, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964) (citation omitted) applies here with equal force:

> Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements of "in controversy" and "good cause," which requirements, as the Court of Appeals in this case itself recognized, are necessarily related.

    \*    \*    \*    \*    \*    \*

Of course, there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury.

■ But the opportunity to conduct a mental examination and the methodology to

---

1. Lakewood has indicated that the psychologist will not testify.

be employed in the course of that examination are two distinct issues. In moving for a protective order Usher's counsel originally emphasized a host of matters: (1) the intrusiveness of a number of the questions posed in the tests, (2) the inappropriateness of many aspects of the tests for what is at issue in this case, (3) the opportunity that the tests afford to obtain answers to questions that would not be permitted as part of normal discovery, (4) the potential, assertedly implicit in certain of the tests, for obtaining mind-control information and (5) the nonutility of some of the tests to determine Usher's mental condition at a time in the past rather than at the present time.

Lakewood then responded to Usher's motion by emphasizing the propriety of its access to a mental examination because Usher has put the subject of mental injury into issue (a contention that is really a straw man in the posture of this case), then by emphasizing the competence of its psychiatrist expert to determine the methodology that he wishes to use—in this instance the administration of the battery of tests by the psychologist. Lakewood's responsive memorandum then went on to provide some general information about the tests and their utility.

■ But it was not until Usher's reply memorandum that the critical issues for this Court's decision were addressed, though surprisingly without reference to the controlling authority (which had not been spoken to by Lakewood's counsel either). *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* — U.S. ——, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993) has injected the trial judge into the expert-testimony area in a more active sense than before by requiring a shift from the "general acceptance" test of *Frye v. United States,*

293 F. 1013, 1014 (D.C.Cir.1923) to an approach called for by the Federal Rules of Evidence ("Rules")—an approach that requires inquiry into a number of factors bearing on reliability. Among *Daubert*'s "general observations" (— U.S. at ——, 113 S.Ct. at 2796), rather than its essaying the formulation of "a definitive checklist or test" (*id.*), was its statement that "the court ordinarily should consider the known or potential rate of error" (*id.* at ——, 113 S.Ct. at 2797).

In that respect Usher has adduced substantial information demonstrating the inadequacy of the correlation factors and the validity factors of all five of the tests in question.[2] Those things are certainly appropriate considerations to be placed into the scales in conjunction with the weighing process mandated by Rule 403—as *Daubert,* — U.S. at ——, 113 S.Ct. at 2798 teaches:

> Finally, Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." Judge Weinstein has explained: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." [Jack] Weinstein, [*Rule 702 of the Federal Rules of Evidence Is Sound; It Should Not Be Amended,*] 138 F.R.D. [631], 632 [ (1991) ].

In this instance that evaluation process includes, among other matters, the need to take into account the other contraindicational factors that have been raised by Usher and

2. Usher's R.Mem. 11–13 follows that treatment with a discussion of the amendment to Rule 412 that was recently enacted by Congress as part of the Violent Crime Control and Law Enforcement Act of 1994. This Court has more than passing familiarity with that subject. As a member of the Advisory Committee on the Rules of Evidence, appointed by Chief Justice Rehnquist when he reconstituted that Committee after a nearly 20-year hiatus, this Court was one of the drafters of the proposed extension of Rule 412 to civil cases. When the Supreme Court then remanded that proposal to the Committee for further consideration, the Committee responded by sending the same version back up the judicial chain of command en route to the Supreme Court—but the matter then became moot when Congress exercised its prerogative of having the final say on the matter, by enacting the version in the very form that had been proposed by our Committee. Here the amendment has no more than limited significance, for its actual content does not apply to the evidence in question in the current dispute, and the quoted language from our Advisory Committee Note (reported at 154 F.R.D. 529) simply reflects a general concern as to invasions of the privacy of alleged victims of sexual misconduct.

that were referred to earlier in this opinion. This Court has performed that balancing test, and it concludes that Usher has by far the better of the argument—and so it rules that the requested protective order should be and is granted.

It is worth observing that this result also has the effect of providing a level playing field for the parties. Usher's psychologist expert will be testifying based upon his clinical evaluation conducted without the disputed testing, and Lakewood's psychiatrist expert will have the identical opportunity. It will then be the province of the trier of fact to resolve the "battle of the experts"—as it will have been joined in that fashion—in conjunction with the evaluation of all of the other evidence presented at trial.