Marilyn K. LAHR, Plaintiff,

v.

FULBRIGHT & JAWORSKI,
L.L.P., Defendant.

Civ. No. 3–94–CV–0981–D.

United States District Court,
N.D. Texas,
Dallas Division.

Aug. 4, 1995.

Horace Newton Cunningham, III, Laura Ann Heisz, Pulley Roberts Cunningham & Stripling, Dallas, TX, Kendra Ki Karlock, Law Office of Kendra Karlock, Dallas, TX, for Marilyn K. Lahr.

Jane Makela, Barbara Michele Golden Lynn, Barry Ray Bell, Carrington Coleman Sloman & Blumenthal, Dallas, TX, for Fulbright & Jaworski.

James L Hicks, Hicks & Associates, Dallas, TX, pro se.

Jane Makela, Barbara Michele Golden Lynn, Michael Allen Birrer, Monica Wiseman Latin, Carrington Coleman Sloman & Blumenthal, Dallas, TX, for Lawrence Kalinec.

Eduardo Flores Cuaderes, Littler Mendelson Fastiff Tichy & Mathiason, Dallas, TX, for Equal Employment Opportunity Commission.

Donna Roberts Morris, Morris & Morris, Flower Mound, TX, for Lisa Beaver.

## *MEMORANDUM OPINION AND ORDER*

BOYLE, United States Magistrate Judge.

Pursuant to the District Court's Order of Reference filed June 28, 1995, came on to be heard July 27, 1995, **Defendant's Motion to Compel Mental Examination of Plaintiff ("Motion to Compel")**, filed June 27, 1995. The issue presented by the defendant's motion to compel is whether the plaintiff in this case, Marilyn K. Lahr, should be ordered to submit to a mental examination pursuant to Fed.R.Civ.P. 35(a), and if so, whether defendant's chosen expert may conduct the examination. For the reasons that follow, the undersigned finds that defendant's motion to compel should be **GRANTED** and plaintiff ordered to submit to an examination by the defendant's expert. Prior to setting forth the reasons for this determination, some background facts are necessary.

### I. *Background:*

This is an employment discrimination case. Plaintiff, Marilyn K. Lahr, has filed this suit against her former employer, defendant Fulbright & Jaworski, L.L.P. ("Fulbright"), alleging that Fulbright has violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* Specifically, Lahr charges that Fulbright sexually harassed, discriminated and retaliated against her. (Pl.'s Third Am.Comp. at ¶ 17, p. 5). In a separate claim, Lahr alleges that the defendants violated the state-law tort of intentional infliction of emotional distress causing her severe mental or emotional distress. *Id.* at ¶ 19, p. 6.

It is upon the foregoing allegations that the defendant advances several arguments in support of its motion for a Rule 35(a) examination. Fulbright argues that because the plaintiff has alleged that she suffered mental and emotional distress that her mental condition is "in controversy" and that she must, therefore, be required to submit to a mental examination. Fulbright further argues that because plaintiff is seeking compensatory damages which may include damages for emotional distress and mental anguish, that "Fulbright has every reason to anticipate that [plaintiff] will seek damages for emotional distress in connection with her Title VII claim". (Confidential Brief in Support of Def.'s Mot. to Compel Mental Examination of Pl. at 4).

In addition to plaintiff's pleadings, Fulbright contends that plaintiff has placed her mental condition in controversy during discovery in this case. Defendant points to the fact that in her Rule 26 Fed.R.Civ.P. disclosures plaintiff named a licensed professional counselor, Mr. Stuart Couch, as a person with knowledge of "the effects of the sexual

harassment, discrimination, retaliation and termination upon plaintiff." *Id.* at 5. In addition, Fulbright points to statements by plaintiff's attorneys indicating that Couch would be designated as an expert in this case. Specifically, an attorney for plaintiff stated that he anticipated Couch would be designated as an expert. *Id.* at 6. In addition, Fulbright directs the undersigned's attention to a hearing before this Court in which plaintiff's counsel made the following statement with regard to Mr. Couch:

> "Your Honor, I designated him as an expert witness. I told him beforehand we considered him an expert witness, and he is. I don't know what else to do.... He's an expert witness. He has opinions relating to Ms. Lahr's mental condition or emotional state." (Hrg. on Mots. Dec. 14, 1994, at 92).

Plaintiff opposes the motion to compel her mental examination. She argues that simply because she has asserted a Title VII claim and a claim for intentional infliction of emotional distress, that it does not follow that her mental condition is "in controversy". Responding to the defendant's argument Lahr disputes that she has decided to present expert testimony on her mental condition at trial, contending that she has not yet made a decision on this question. Finally, plaintiff argues that the information Fulbright seeks can be obtained from other, less intrusive, sources.

Having reviewed the parties' respective positions underlying this dispute, the undersigned turns to the law governing Rule 35(a) examinations.

## II. *Analysis*

*Rule 35(a)*

Requests for mental or physical examinations in federal civil actions are governed by Fed.R.Civ.P. 35(a). Rule 35(a) provides, in pertinent part:

> When the mental or physical condition (including the blood group) of a party or of a person in the custody or under the legal control of a party, is **in controversy,** the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner or to produce for examination the person in the party's custody or legal control. The order may be made only on motion for **good cause** shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, condition, and scope of the examination and the person or persons by whom it is to be made. (emphasis added)

Rule 35, as contrasted with the other discovery provisions, is distinct in its requirements that the condition as to which the examination is sought be "in controversy", **and** that the movant affirmatively demonstrate "good cause" for the examination. *Schlagenhauf v. Holder,* 379 U.S. 104, 117, 85 S.Ct. 234, 242, 13 L.Ed.2d 152 (1964). (emphasis added)

In construing the court's obligation under the requirements of Rule 35(a), the United States Supreme Court in *Schlagenhauf, supra,* made the following observation.

> "Rule 35.... requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirement of "in controversy" and "good cause" which requirements ... are necessarily related ... [The requirements mean] ... that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule. *Schlagenhauf,* 379 U.S. at 118–119, 85 S.Ct. at 242–43.

Even in light of the rule's restrictions, however, courts have held that Rule 35(a) should be construed liberally in favor of granting discovery. *In re: Certain Asbestos Cases,* 112 F.R.D. 427, 432 (N.D.Tex.1986) citing *4 A.J. Moore, W. Taggart & J. Wicker,* Moore's Federal Practice, ¶ 35.04 at 35–20, 21 (2d Ed.1985); *Cody v. Marriott,* 103 F.R.D. 421, 422 (D.Mass.1984) citing *Postell v. Amana Refrigeration, Inc.,* 87 F.R.D. 706, 707 (N.D.Ga.1980).

*"In Controversy"*

The Rule 35 decision has been termed "intensively fact-specific", which may underlie the inconsistent rulings among the courts addressing the "in controversy" and "good cause" issues. 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure*, § 2234.1 at 482 (1994). The "in controversy" requirement, in particular, has spawned "considerable dissention" among the courts. See *Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 221–22 (S.D.N.Y.1994) citing *Robinson v. Jacksonville Shipyards, Inc.*, 118 F.R.D. 525, 531 (N.D.Fla.1988) "(Plaintiff did not place her mental condition in controversy even though she claimed backpay for days lost due to stress and alleged serious effect on psychological well-being)"; *Cody v. Marriott Corp.*, 103 F.R.D. 421, 422 (D.Mass.1984). "(Plaintiff did not place her mental condition in controversy by claiming damages for emotional distress.)" The *Bridges* court contrasted the foregoing holdings with cases coming to opposite conclusions. 850 F.Supp. at 221 citing *Zabkowicz v. West Bend Co.*, 585 F.Supp. 635, 636 (E.D.Wis.1984). "(Allegations of emotional distress from sexual harassment appropriate basis for allowing order to compel psychiatric examination)" and *Everly v. United Parcel Services, Inc.*, No. 89–C 1712, 1991 WL 18429 *1, 1991 U.S. Dist. LEXIS 1255 *2 (N.D.Ill. Feb. 4, 1991) "(plaintiff placed mental condition in controversy by specifically alleging in her sexual discrimination complaint a claim or intentional infliction of emotional distress)". The *Bridges* court ultimately concluded that although there was no "hard and fast rule that can explain these different results" mental examinations have primarily been permitted in cases that have either involved a separate tort claim for emotional distress or an allegation of on-going severe mental injury. 850 F.Supp. at 222 citing *Everly*, 1991 WL 18429 at *1, and *Brandenberg v. El Al Israel Airlines*, 79 F.R.D. 543, 546 (S.D.N.Y.1978) and

*Lowe v. Philadelphia Newspapers, Inc.*, 101 F.R.D. 296, 298–99 (E.D.Pa.1983).

■■■ With the above authority in mind with respect to the "in controversy" requirement of Rule 35, the undersigned turns to the case at hand. As noted above, although the cases analyzing this requirement fail to provide a definitive test for deciding the issue, a distinction between the cases has emerged in favor of an examination when a plaintiff has alleged a separate tort claim for emotional distress. In this case, plaintiff has alleged a tort claim of intentional infliction of emotional distress contending that she suffered "severe mental or emotional distress". Her assertion of this claim supports a finding that she has placed her mental condition "in controversy". This finding is supported by the Supreme Court's reasoning in *Schlagenhauf, supra*, where the Court refused to permit the Rule 35 examination noting that "*Schlagenhauf* did not assert his mental or physical condition either in support of or in defense of a claim." 379 U.S. at 119, 85 S.Ct. at 243. In contrast, Lahr alleges that she suffered severe mental or emotional distress, thereby asserting her mental condition in support of her claim of intentional infliction of emotional distress. That this assertion will be contested by the defendants cannot be disputed. Further support for finding that Lahr has placed her mental "in controversy" can be found in her request for compensatory damages. Requests for compensatory damages may be based upon "future pecuniary losses, **emotional pain, suffering**, inconvenience, **mental anguish, loss of enjoyment of life**, and other pecuniary losses". (emphasis added) 42 U.S.C. § 1981a(b)(3); *Johns v. Evergreen Presbyterian Ministries, Inc.*, 826 F.Supp. 1050, 1052 (E.D.Tex.1993) (*other citations omitted*). Although it is not entirely clear that Lahr will base her claim for compensatory damages on her alleged emotional pain or mental anguish her proof of her intentional infliction of emotional distress will necessarily require the same type of evidence.[1]

---

1. To prove a claim of intentional infliction of emotional distress a plaintiff must establish *inter alia* that she suffered "severe" emotional distress. Texas courts have defined "severe emotional distress" as distress so extreme that no reasonable man could be expected to endure it without undergoing unreasonable suffering. *Badgett v. Northwestern Resources Co.*, 818 F.Supp. 998, 1003 (W.D.Tex.1993), *citing Tidelands Auto Club v. Walters*, 699 S.W.2d 939, 941,

Finally, as discussed by the court in *Robinson, supra,* the presence of psychiatric testimony in support of a plaintiff's claims provides an additional element for finding that a plaintiff has placed her mental condition "in controversy". *Robinson,* 118 F.R.D. at 528–29 (*citations omitted*). In this case, as noted above, plaintiff's counsel has previously told this court that Dr. Couch was "designated . . . as an expert witness." (Hrg. on Mots. Dec. 14, 1994, at 92). Plaintiff's counsel specifically told the court "He's an expert witness. He has opinions relating to Ms. Lahr's mental condition or emotional state." *Id.* Although plaintiff's counsel now takes the position that there has been no final decision on the issue of whether Couch would testify as an expert or whether expert testimony will be provided at all in Lahr's case, her previous comments certainly provide a basis that this type of testimony can be expected. For all of the foregoing reasons, the undersigned finds that plaintiff has placed her mental condition "in controversy".

*"Good Cause"*

 Turning next to the second requirement for a Rule 35 mental examination, it must be determined whether the defendant has established "good cause" for the examination. The factors reviewed in determining "good cause" often merge with those requirements necessary to find that a plaintiff's mental condition is "in controversy". *Duncan v. Upjohn,* 155 F.R.D. 23, 25 (D.Conn. 1994) citing *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243. As with the "in controversy" requirement, one factor looked to by the court in deciding whether "good cause" for an examination exists is whether a plaintiff plans to prove his claim through the testimony of expert witnesses. *Duncan,* 155 F.R.D. at 25 (other citations omitted). In *Duncan,* the court emphasized the need to "preserve[ ] the equal footing of the parties to evaluate the plaintiff's mental state." *Duncan,* 155 F.R.D. at 25 citing *Tomlin v. Holecek,* 150 F.R.D. 628, 633 (D.Minn.1993). Courts have also looked to whether the parties seeking the medical examination has exhausted alter-

native discovery procedures prior to seeking the examination. *Everly, supra,* 1991 WL 18429 at *1 citing *Anson v. Fickel,* 110 F.R.D. 184, 186 (N.D.Ind.1986), citing *Marroni v. Matey,* 82 F.R.D. 371, 372 (E.D.Pa. 1979). See also *Acosta v. Tenneco Oil Co.,* 913 F.2d 205, 209 (5th Cir.1990) (where defendants had deposed plaintiff and submitted interrogatories and document requests, the court found defendant had sufficient information to pursue its claim without an examination.)

Plaintiff contends that defendants have failed to show "good cause" for the examination in that they have failed to establish that they have exhausted alternative, less intrusive means of obtaining the information they seek through the examination. The undersigned disagrees. Plaintiff's argument in this regard rests primarily on her position that plaintiff has available for review plaintiff's deposition testimony and records regarding her consultations with her counselors and the medical record ordered by the court to be produced. However, a review of this information reveals that it is inadequate to evaluate plaintiff's mental condition and prepare a defense in this regard. In *Duncan, supra,* the court, in addressing this same argument, found that although the plaintiff had produced voluminous medical records and reports, this production did not necessarily negate the defendant's interest in an independent examination of the plaintiff. The court found that "[o]nly if no additional relevant information could be gained by an examination of Mr. Duncan, should the motion for psychiatric examination be denied." 155 F.R.D. at 25.

In this case, the defendant does not have voluminous medical records of the plaintiff. Rather, this court conducted an *in camera* review of plaintiff's medical records and ordered only a portion of one page produced to defendant. And, plaintiff's deposition testimony and counselors' reports while helpful, do not provide the type of first-hand observation and analysis needed to evaluate her claims of mental and emotional distress.

945 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). With this high burden of proof on her tort claim it follows that in proving her tort claim

plaintiff will necessarily be offering evidence supporting her request for compensatory damages.

This position is supported by the affidavit of Defendant's expert Dr. Susan D. Gifford. Specifically, Dr. Gifford, a psychologist, states in her affidavit:

> In order to determine if an event or series of events have had a psychological impact on a person, the psychologist conducting the interview needs to learn about events that occurred prior to that time. Furthermore, inquiring into a full longitudinal history enables the interviewer to understand how the subject handled other stressors in her life in order to better assess how the matter of which she complains may have affected her. With respect to Ms. Lahr, I would need to inquire about events in her life prior to her employment with Fulbright to determine: 1) the actual diagnosis and delineation of etiology—assessment limited to behavior since 1989, disallows delineation of causality; 2) her emotional status prior to her employment at Fulbright and whether her employment there affected that status; 3) if she has experienced emotional distress, all possible stressors that caused, in whole or in part such distress; 4) pre-existing learning personality patterns or adaptive behavior patterns which might impact perceptual and attributional factors throughout her life; 5) prediction or prognosis for any condition cannot be made without awareness of premorbid functioning and learned or ingrained factors.

Dr. Gifford also emphasizes that it may be necessary to administer a standardized psychological test or tests to assess the presence and severity of any symptoms. (Def.'s Mot. to Compel Mental Examination of Plaintiff, Ex. B at 1—3 "Gifford's affidavit").

As pointed out above Lahr's medical records are extremely limited due to the court's *in camera* inspection and a second-hand review of her counselor's records and deposition testimony would not provide the kind of "rapport" Dr. Gifford has indicated she needs in order "comprehensively assess Ms. Lahr" (Gifford's affidavit at 2) For these reasons the undersigned finds that Fulbright has provided "good cause" for the mental exam.

It should be emphasized that this finding is not based upon a belief by the undersigned that there is any certainty that plaintiff will offer expert testimony with regard to her mental condition. Rather because she has placed her mental condition "in controversy" and there are no adequate alternative sources by which her claims can be evaluated a finding of "good cause" is warranted. While the offering of expert testimony certainly supports a finding of "good cause" for a Rule 35 examination, it does not appear that the courts have held it to be a requirement prior to allowing a Rule 35 examination.[2]

*Nature and Scope of Examination*

■ Having found that defendant has met both the "in controversy" and "good cause" requirements for a Rule 35 examination, the undersigned must next determine whether the nature of the examination sought by plaintiffs is appropriate or, as plaintiff complains, too intrusive under the circumstances. In her affidavit, Dr. Gifford indicates that a three-hour clinical intake and evaluation is necessary in order to evaluate Lahr's claims.

---

**2.** See *Duncan*, 155 F.R.D. at 25 (where the court found that "good cause" existed based on the plaintiff's allegation of an ongoing psychiatric harm, and the court noted that the fact that plaintiff intended to prove his claim through psychiatric testimony by his own expert provided "other indicia of "good cause" in the case.") *Duncan*, 155 F.R.D. at 25. In addition, in *Anson*, supra, the court found "good cause" for a mental examination where plaintiff had been confined to a psychiatric ward after an accident at issue in the case; however there appeared to be no indication in the case plaintiff planned to offer expert testimony regarding psychiatric injury. The court in permitting the exam found that because plaintiff had been confined in a psychiatric ward after the accident that "the nature and seriousness of the emotional distress experienced by the plaintiff after the accident is an important issue in this lawsuit." 110 F.R.D. at 186. That plaintiff need not offer expert testimony prior to allowing a defendant a Rule 35 exam is further supported in *Everly*, supra, where although it is unclear whether the plaintiff planned to offer expert testimony as to her claim of emotional distress, it is clear that the court did not rely on this factor in finding that defendant's had established "good cause" for the mental examination by proving that alternative sources of information were not sufficient "from a psychiatric standpoint" to present expert testimony by the defendants on this issue. *Everly*, 1991 WL 18429 at *1, *2.

She further indicates that a full history of Lahr's personal life is necessary to assess the particular symptomology in issue in this case. Finally, Gifford indicates that it may be necessary to administer a standard psychological test or tests to access the presence or severity of any symptoms in the case. (Gifford's Affidavit at 1—4).

Plaintiff contends that such an examination is intrusive and overly broad under the circumstances. The undersigned disagrees. First, the undersigned finds Dr. Gifford's affidavit to be credible and persuasive as to the type of examination necessary to analyze plaintiff's claims of severe emotional distress. Moreover, because plaintiff's emotional and mental state of health has been put at issue in this case by her, the type of "searching questions of plaintiff as to her past physical and mental emotional problems" will be necessary as a basis for forming an expert opinion by defendant's expert. See *Lowe,* 101 F.R.D. at 299. In *Lowe,* facing similar objections from the plaintiff as to an extensive mental examination based on her allegations of severe emotional distress, the court stated the following:

> [defendant's expert's] examination undoubtedly will consist of searching questions of the plaintiff of her past physical and mental and emotional problems. He will most probably study her answers and reactions as a basis for forming an expert opinion. Defense is entitled to have such an examination. *Lowe,* 101 F.R.D. at 299, citing *Schlagenhauf,* (citation omitted) and *Ryzlak v. McNeil Pharmaceutical,* Civil Action 81–3825 [1982 WL 113] (E.D.Pa. 1982), (Newcomer, J.).

In sum, the undersigned finds that defendant has established, through the affidavit of Dr. Gifford, that type of examination proposed by her is appropriate under the circumstances. For the court to intervene and limit the type of examination an expert has indicated is necessary in order to analyze plaintiff's claims would subvert the truth finding function inherent in Rule 35 examinations. "Rule 35 ... has been described as a 'powerful instrument for ascertaining the truth.'" *In re: Certain Asbestos Cases,* 112 F.R.D. at 433 citing No. 8 C. Wright &

Miller, Federal Practice and Procedures § 2231 at 665–666 (1970). For this reason the undersigned will not limit the extent and nature of the examination proposed by Dr. Gifford in her affidavit. Finally, any concerns over plaintiff's privacy interests can be adequately addressed by a protective order limiting disclosure of the results of the examination to the attorneys and experts for the attorneys until further court order.

Additionally, plaintiff's request that her expert be present during the examination must be addressed. While this is not unheard of, some courts have found that the success of a given examination relies on unimpeded conversation between physician and patient and refused such a request. *Duncan,* 155 F.R.D. at 26 citing *Tomlin,* 150 F.R.D. at 632; *Brandenberg,* 79 F.R.D. at 546. Dr. Gifford has specifically stated in her affidavit that the presence of a second expert during the exam "might unduly influence the evaluation". (Gifford's Affidavit at 3) The undersigned accepts this statement as credible. Plaintiff's request for her own expert to sit through the exam is therefore denied.

*Independent expert*

Turning now to the final issue facing this court, the undersigned must resolve whether plaintiff's objection that defendant's proposed expert does not constitute an "independent" expert as contemplated by Rule 35 requires the court to order that another expert be utilized to conduct the examination of plaintiff. Plaintiff's argument against Dr. Gifford is two-fold. Plaintiff contends that Gifford is not independent and further that she is not qualified to testify regarding the effects of sexual harassment or discrimination. Rule 35 provides no guidance how the examiner is to be chosen. 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *supra,* 2234.2 at 485. It has been said that the usual attitude is that although the moving party has no absolute right to the choice of the physician, when no serious objection arises, it is probably best for the court to appoint the doctor of the moving party's choice. *Id.* See also *Powell v. United States,* 149 F.R.D. 122, 124 (E.D.Va.1993).

Courts have rejected experts where they have found bias and prejudice on the part of the doctor chosen by the moving party. 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *supra,* § 2234.2 at 486. Some examples of cases where the courts have found a valid objection to the proposed expert witness are set forth in the *Duncan, supra,* case 155 F.R.D. at 26. In the *Main v. Tony L. Sheston–Luxor Cab Co.,* a court rejected a doctor who was also a client of the defendant's attorney. *Duncan,* 155 F.R.D. at 26 *citing Main v. Tony L. Sheston–Luxor Cab Co.,* 249 Iowa 973, 89 N.W.2d 865 (1958). Likewise in *Adkins v. Eitel,* a court found an abuse of discretion for the trial court to have appointed a physician when an attorney had refused to answer questions regarding their business relationship. *Duncan,* 155 F.R.D. at 26 *citing Adkins v. Eitel,* 2 Ohio App.2d 46, 31 O.O.2d 95, 206 N.E.2d 573 (1965).

In the instant case, as noted above, plaintiff objects that Dr. Gifford has already received information from the defendant regarding the case and therefore is not independent as contemplated by the statute. The undersigned finds that this has not been established. Based on the statements of defendant's counsel at the hearing on this issue, contact between the defendant and Dr. Gifford has been minimal, and there is no indication in this case that she has received information that would cause her to be biased against plaintiff in this case. Nor is this a case where the expert has had a previous business or social relationship with defendant's attorney or defendant. See *Powell,* 149 F.R.D. at 124 (finding that such a relationship would prevent the appointment of defendant's proposed expert pursuant to Rule 35). Because plaintiff has failed to establish any bias or prejudice on the part of Dr. Gifford, the undersigned finds that she has failed to establish that Dr. Gifford may not be designated as plaintiff's expert to conduct the Rule 35 examination. To the extent plaintiff is concerned about any statements defendant has made to Dr. Gifford, this could properly be the subject of impeachment testimony during the trial. *Duncan,* 155 F.R.D. at 26. ("Cross-exami-

nation provides an adequate safeguard against bias on the part of a witness")

With regard to plaintiff's other concern that Dr. Gifford is not qualified to conduct this examination and thereafter testify as to her results, such concerns can also be adequately protected through cross-examination. As stated by the court in *Powell,* addressing these same concerns, "Nothing in this opinion today prevents the plaintiff from attempting to impeach [defendant's expert] using matters raised in this motion." 149 F.R.D. at 124. In short, plaintiff has failed to set forth a valid objection to the defendant's use of Dr. Gifford to conduct the Rule 35 examination in this case and therefore their objection in this regard must be denied.

### III. *Conclusion*

For the foregoing reasons, the undersigned finds that defendant, Fulbright, has established that plaintiff has placed her mental condition "in controversy" in this case and has further established "good cause" for a mental examination pursuant to Fed.R.Civ.P. 35(a).

The undersigned further finds that because plaintiff has failed to assert a valid objection to the use of defendant's proposed expert, that Dr. Gifford may conduct the mental examination of plaintiff in this case.

The undersigned further finds that the type of examination detailed in Dr. Gifford's affidavit attached as Exhibit B to defendant's motion to compel, is the appropriate method of conducting the examination. Dr. Gifford has adequately set forth her need to conduct her evaluation in this manner and the prejudice her analysis would suffer should she be restricted in time or scope in her examination.

Accordingly, for the foregoing reasons, **Defendant's Motion to Compel Mental Examination of Plaintiff,** filed July 27, 1995, is **GRANTED.** Defendant's are to confer with plaintiff's counsel as to the time and place of the examination. The defendant is to thereafter submit to the court a proposed order setting forth the time, place, manner, conditions, and scope of the examination, and the person by whom the examination is to be

made. This proposed order should be submitted no later than ten (10) days from the date this order is signed. The order should be drafted in accordance with the rulings set forth in this order.

SO ORDERED.