Marilyn K. LAHR, Plaintiff,

v.

FULBRIGHT & JAWORSKI, L.L.P., Defendant.

Civil A. No. 3:94–CV–0981–D.

United States District Court,
N.D. Texas,
Dallas Division.

Jan. 2, 1996.

H.N. Cunningham, III, Kendra Karlock, and James C. Baker of Pulley, Roberts, Cunningham & Stripling, L.L.P., Dallas, TX, for plaintiff.

Barbara M.G. Lynn, Jane Makela, and Diane M. Sumoski of Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, TX, for defendant.

FITZWATER, District Judge:

In this action alleging sex discrimination, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and a pendent state-law claim of intentional infliction of emotional distress, the magistrate judge ordered plaintiff to undergo a Fed.R.Civ.P. 35(a) mental examination. See Lahr v. Fulbright & Jaworski, L.L.P., 164 F.R.D. 196 (N.D.Tex.1995). Because plaintiff's claim for intentional infliction of emotional distress has affirmatively placed her mental condition in controversy, and because her objections to the magistrate judge's order present no basis for reversal, the order is affirmed.

I

The relevant background facts are set out in the opinion of the magistrate judge and need not be repeated at length. Plaintiff Marilyn K. Lahr, Esq. ("Lahr") was employed as an attorney in the litigation section of the Dallas office of the law firm of defendant Fulbright & Jaworski, L.L.P. ("F & J") until F & J terminated her employment. Lahr alleges that she was discharged on the basis of her female gender, and that throughout the course of her tenure with F & J, she was subjected to persistent sexual harassment. In particular, she contends that female employees were referred to in sexually derogatory terms, and that men treated women with vulgarity and hostility. Lahr maintains that this environment caused women to seek employment elsewhere, and otherwise adversely affected female employees at F & J. In addition, Lahr maintains that female attorneys were treated less favorably and that when she complained about this, she became the object of retaliation. Lahr alleges that F & J violated Title VII by sexually harassing and discriminating against her on the basis of sex, and by retaliating against her, and that it committed the Texas state-law tort of intentional infliction of emotional distress.

In the course of discovery, F & J requested that Lahr submit to a mental examination in connection with her claim for intentional infliction of emotional distress, and her prayer for compensatory damages. After Lahr refused, F & J filed a motion to compel. F & J argued that because Lahr alleges that she suffered mental and emotional distress, and since she is seeking compensatory damages that may include damages for emotional distress and mental anguish, Lahr's mental condition is in controversy and she must submit to an examination. Id. at 197.

The court referred F & J's motion to compel to the magistrate judge for determination. The magistrate judge granted the

motion, *id.* at 203, and thereafter established the time, place, and parameters of the examination.

The magistrate judge reasoned that Rule 35(a) should be liberally construed in favor of discovery,[1] limited by the requirements that the subject's mental state be "in controversy," and that there be good cause for an examination. *Id.* at 198. She noted the inconsistent rulings among courts addressing the "in controversy" requirement, suggesting this may result from the "intensively fact-specific" nature of Rule 35 decisions. *Id.* at 199. The magistrate judge concluded, however, that this component of Rule 35(a) had been satisfied because Lahr "has alleged a tort claim of intentional infliction of emotional distress contending that she suffered 'severe mental or emotional distress[,]' " and that "[h]er assertion of this claim supports a finding that she has placed her mental condition 'in controversy.' " *Id.* The magistrate judge contrasted Lahr's allegations with the ones at issue in *Schlagenhauf v. Holder,* 379 U.S. 104, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964), the Supreme Court's seminal Rule 35 decision. In *Schlagenhauf* the Court vacated an examination order because the defendant "did not assert his mental or physical condition either in support of or in defense of a claim." *Lahr,* 164 F.R.D. at 199 (quoting *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243). The magistrate judge noted that Lahr "alleges that she suffered severe mental or emotional distress, thereby asserting her mental condition in support of her claim of intentional infliction of emotional distress." *Id.*

The magistrate judge also found that Lahr's request for compensatory damages provided further support for the conclusion that Lahr had placed her mental condition in controversy. The judge reasoned that although it was not entirely clear whether Lahr's claim for compensatory damages pursuant to 42 U.S.C. § 1981a(b)(3) would be based upon emotional pain or mental anguish, "her proof of her intentional infliction of emotional distress will necessarily require.

the same type of evidence." *Lahr,* 164 F.R.D. at 199 (footnote omitted).

The magistrate judge held finally that Lahr's mental state was "in controversy" because Lahr had designated Dr. Stuart Couch ("Dr. Couch") as an expert witness to give opinions relating to Lahr's mental condition or emotional state, and Lahr's counsel had indicated that Lahr could be expected to offer this type of testimony. *Id.* at 200. The magistrate judge noted that "the presence of psychiatric testimony in support of a plaintiff's claims provides an additional element for finding that a plaintiff has placed her mental condition 'in controversy.' " *Id.* (citing *Robinson v. Jacksonville Shipyards, Inc.,* 118 F.R.D. 525, 528–29 (M.D.Fla.1988)).

The magistrate judge then determined whether there was "good cause" for the mental examination.

Lahr contended that F & J had failed to demonstrate good cause because F & J had not established that it had exhausted alternative, less intrusive means for obtaining the information it sought by way of the examination. Lahr maintained that F & J could review her deposition testimony, records regarding her consultations with counselors, and a medical record that the magistrate judge had ordered produced.

The magistrate judge rejected this argument. The judge found after reviewing this information that it was inadequate to evaluate Lahr's mental condition and prepare a defense. *Id.* at 200. The magistrate judge noted that, unlike *Duncan v. Upjohn Co.,* 155 F.R.D. 23 (D.Conn.1994), where the plaintiff had produced voluminous medical records and reports, "[i]n this case [F & J] does not have voluminous medical records of [Lahr]" because the magistrate judge had ordered Lahr to produce only one page of her medical records. *Lahr,* 164 F.R.D. at 200. Moreover, she concluded that Lahr's "deposition testimony and counselors' reports while helpful, do not provide the type of first-hand observation and analysis needed to evaluate her claims of mental and emotional distress." *Id.* The magistrate judge found support for

---

1. Lahr argues that the magistrate judge's holding that Rule 35(a) is to be construed liberally is contrary to law. The court disagrees. *See In re*

*Certain Asbestos Cases,* 112 F.R.D. 427, 432 (N.D.Tex.1986) (Rule 35(a) should be interpreted liberally in favor of discovery).

this reasoning in the affidavit testimony of F & J's proposed psychologist, Dr. Susan D. Gifford ("Dr. Gifford"), who opined that this information was inadequate to evaluate plaintiff's mental condition. *Id.* The magistrate judge also credited Dr. Gifford's opinions concerning the necessary length and scope of a mental examination, and refused Lahr's request that the court appoint an independent expert. *Id.* at 202.

Lahr objects to the order granting F & J's motion to compel, and asks the court to reverse it.

## II

The court reviews decisions of the magistrate judge in nondispositive matters pursuant to Rule 72(a), which provides that the court "shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law."

■ "The 'clearly erroneous' standard applies to the factual components of the magistrate judge's decision." *Smith v. Smith,* 154 F.R.D. 661, 665 (N.D.Tex.1994). "[T]he district court may not disturb a factual finding of the magistrate judge 'unless, although there is evidence to support it, the reviewing court is left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *RTC v. Sands,* 151 F.R.D. 616, 618 (N.D.Tex.1993) (citing *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985))). "If a magistrate judge's 'account of the evidence is plausible in light of the record viewed in its entirety,' a district judge may not reverse it." *Id.* (quoting *RTC v. Sands,* 151 F.R.D. at 618).

■ The magistrate judge's legal conclusions are freely reviewable. *Id.* The district judge applies a *de novo* standard, and reverses if the magistrate judge erred in some respect in her legal conclusions. *Id.*

■ In prior decisions, the court has held that an abuse of discretion standard applies to certain aspects of magistrate judge rulings. *See, e.g., id.; RTC v. Sands,* 151 F.R.D. at 619. Nothing in Rule 72(a) forbids application of this standard of review or suggests that this measure is inappropriate when analyzing those aspects of a magistrate judge's decision that are vested in her discretion. Indeed, there are numerous instances in which magistrate judges exercise discretion in resolving nondispositive matters. Accordingly, the court holds that the abuse of discretion standard governs review of "that vast area of ... choice that remains to the [magistrate judge] who has properly applied the law to fact findings that are not clearly erroneous." *Smith,* 154 F.R.D. at 665 (quoting *In re REPH Acquisition Co.,* 134 B.R. 194, 202–03 (N.D.Tex.1991)).

## III

■ Rule 35(a) empowers the court to order a mental examination of a party when the party's mental condition is "in controversy," and the party seeking the examination has demonstrated "good cause." *See In re Certain Asbestos Cases,* 112 F.R.D. 427, 434 (N.D.Tex.1986). In *Schlagenhauf* the Court held that "[m]ental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the rule," 379 U.S. at 121, 85 S.Ct. at 244, and vacated an order compelling the defendant in a negligence action to submit to examinations in the specialties of internal medicine, ophthalmology, neurology, and psychiatry, *id.* at 120, 122, 85 S.Ct. at 244. A party must "affirmatively put into issue" her mental condition to warrant a Rule 35(a) order. *See id.* at 121, 85 S.Ct. at 244. And even where a party's mental condition is "in controversy," there must still be "good cause" to order the examination. *In re Certain Asbestos Cases,* 112 F.R.D. at 434.

## IV

The court addresses initially whether the magistrate judge erred in holding that Lahr had placed her mental condition in controversy.

### A

■ The first basis on which the magistrate judge found the "in controversy" requirement of Rule 35(a) to be satisfied was

Lahr's claim for intentional infliction of emotional distress.

 When a plaintiff asserts a mental injury, a Rule 35(a) examination may be warranted on the basis of the pleadings alone. *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243. A mental injury is asserted when a plaintiff alleges a permanent or ongoing mental disorder or emotional distress. *See Jansen v. Packaging Corp. of Am.,* 158 F.R.D. 409, 410–11 (N.D.Ill.1994) (granting motion for psychological examination where plaintiff alleged ongoing emotional distress due to sexual harassment); *Shepherd v. American Broadcasting Cos.,* 151 F.R.D. 194, 212 (D.D.C.1993) (alleging emotional distress as a consequence of discrimination), *vacated on other grounds,* 62 F.3d 1469 (D.C.Cir.1995); *Tomlin v. Holecek,* 150 F.R.D. 628, 630 (D.Minn.1993) (asserting severe and permanent psychological injury). A claim that one has required psychiatric or psychological care as a consequence of discriminatory treatment is also considered a claim of "injury" and therefore places the party's mental condition in issue. *See Lowe v. Philadelphia Newspapers, Inc.,* 101 F.R.D. 296, 298–99 (E.D.Pa.1983); *see also Anson v. Fickel,* 110 F.R.D. 184, 186 (N.D.Ind.1986) (granting examination where plaintiff claimed he was required to seek psychiatric treatment as a consequence of traffic accident).

Courts considering claims for intentional infliction of emotional distress have held that the plaintiff's mental condition was in controversy. *See, e.g., Everly v. United Parcel Serv., Inc.,* No. 89–C 1712, 1991 WL 18429, at *1 (N.D.Ill. Feb. 4, 1991) (holding intentional infliction of emotional distress claim placed mental condition in controversy); *Peters v. Nelson,* 153 F.R.D. 635, 638 (N.D.Iowa 1994) (holding *inter alia* that plaintiff's claim for intentional infliction of emotional distress placed her mental condition in controversy); *Turner v. Imperial Stores,* 161 F.R.D. 89, 95 (S.D.Cal.1995) (noting that intentional infliction of emotional distress claims provide basis for mental examinations). These decisions generally do not explain why such a cause of action put the plaintiff's mental condition in issue. Based upon the relevant cases, however, it appears that a separate tort claim for emotional distress alleges an action for emotional *injury* independent of other causes. It is therefore distinct from claims for emotional damages flowing from some other tortious injury.

 In an action for intentional infliction of emotional distress, the injury that forms the basis of the claim is the severe emotional distress that accompanies the defendant's outrageous conduct. In order to recover on a claim for intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's actions caused plaintiff emotional distress; and (4) the plaintiff's distress was severe. *Twyman v. Twyman,* 855 S.W.2d 619, 621 (Tex.1993). The nature of this tort is distinguishable from one in which a claimant suffers a wrong, such as for the wrongful death of a child, and seeks compensation for emotional injury as part of her recovery. *See, e.g., Moore v. Lillebo,* 722 S.W.2d 683, 688 (Tex.1986). A plaintiff who alleges an action for intentional infliction of emotional distress asserts a mental or emotional injury, and thereby places her mental condition in controversy on the basis of the pleadings alone. *See Turner,* 161 F.R.D. at 95; *Peters,* 153 F.R.D. at 638.

Lahr argues that a claim for intentional infliction of emotional distress does not put her mental condition in controversy unless she asserts that such distress caused her to seek medical or psychiatric treatment. The court finds no such requirement in Rule 35(a). As the Supreme Court noted in *Schlagenhauf,* in some circumstances a plaintiff places her mental condition in controversy by means of the allegations of her pleadings. *Schlagenhauf,* 379 U.S. at 119, 85 S.Ct. at 243. A claimant for intentional infliction of emotional distress does not ask a jury to value the suffering that would ordinarily accompany a wrong. Instead, she raises mental anguish as *the essence* of the wrong, thereby making her mental condition an issue in the case.

In the proceedings before the magistrate judge, Lahr relied on several cases to refute the proposition that alleging intentional in-

fliction of emotional distress warrants a mental examination. These decisions are distinguishable. In *Sabree v. United Bhd. of Carpenters and Joiners of Am., Local No. 33*, 126 F.R.D. 422, 426 (D.Mass.1989), the court held that a defendant union was not entitled to the records of plaintiff's psychotherapist in defending against the plaintiff's race discrimination suit in which he sought damages for lost wages and emotional distress. The plaintiff in *Sabree* did not raise his emotional distress as a separate claim, but instead sought compensation for the emotional distress associated with being a victim of discrimination.[2] Similarly, in *Underwriters Life Ins. v. Cobb*, 746 S.W.2d 810 (Tex.App.1988), the plaintiffs collected damages for mental anguish associated with the defendant's denial of an insurance claim. The suit was for breach of the duty of good faith and fair dealing, negligence, and violations of the Texas Insurance Code and the Deceptive Trade Practices–Consumer Protection Act. *Id.* at 813. The underlying injury was unethical business dealing, not emotional harm.

The magistrate judge did not err in holding that Lahr's claim for intentional infliction of emotional distress placed her mental condition in controversy.

## B

■ The magistrate judge also held that Lahr's request for compensatory damages provided further support for the finding that Lahr had put her mental condition in controversy.

Although this does not appear to be the principal ground for the magistrate judge's conclusion that Lahr's mental condition is in controversy, and although the court can affirm the magistrate judge's order solely on the basis of Lahr's claim for intentional infliction of emotional distress, the court will reach this aspect of the order. First, Lahr could dismiss her claim for intentional infliction of emotional distress and argue that this

predicate for the magistrate judge's decision has been abrogated, potentially requiring additional proceedings before the magistrate judge and the court to determine if the mental examination can go forward. Second, in view of the amendment to 42 U.S.C. § 1981a(b)(3) to permit recovery of compensatory damages in Title VII cases, the issue presented is one that could recur in this district, and should be decided.

Most courts refuse to grant mental examinations in Title VII cases where the employee claims mental anguish associated with being the victim of discrimination. These courts reason that because the test for a hostile work environment is an objective one, a jury can assess the plaintiff's anguish without delving into the plaintiff's subjective psychological reaction. *See, e.g., Robinson*, 118 F.R.D. at 528–29 (reversing magistrate judge order of mental examination in Title VII hostile work environment case, and distinguishing cases where Title VII plaintiff places mental state in issue by bringing tort claim for emotional injury); *Cody v. Marriott Corp.*, 103 F.R.D. 421, 422–23 (D.Mass.1984) (holding allegation of emotional distress in Title VII case, without alleging specific mental injury or need for counseling, insufficient to warrant Rule 35(a) examination).

These Title VII cases can be understood by comparing them to tort claims for physical injury. *See, e.g., Coates v. Whittington*, 758 S.W.2d 749 (Tex.1988) (applying analogous Texas discovery rule). A person whose body is scarred by the negligence of another may recover for the injury, as well as any damages naturally flowing from the injury. These damages include the "emotional pain, torment, and suffering that a plaintiff who has been burned and scarred would experience in all reasonable probability." *Id.* at 752. The emotional harm in such cases is not the injury and is therefore not "in controversy." A contrary holding would "open the door to involuntary mental examinations in virtually every personal injury suit." *Id.* Some torts, by their very nature, assure that

---

2. The plaintiff sought emotional damages pursuant to the state anti-discrimination statute, Mass. Gn.L. ch. 151B, § 4. At the time of suit, damages for emotional distress were unavailable pursuant to Title VII. The state-law action was not

a claim for intentional infliction of emotional distress, but rather a "garden variety claim of emotional distress" associated with the underlying injury—race discrimination. *Sabree*, 126 F.R.D. at 426.

the claimant will suffer genuine mental anguish. *See Moore v. Lillebo*, 722 S.W.2d 683, 685 (Tex.1986). One may therefore "have the issue of mental anguish submitted to the jury on the basis of the emotional impact suggested by the circumstances." *Connell v. Steel Haulers, Inc.*, 455 F.2d 688, 691 (8th Cir.1972). Jurors relying on their own empathy must award damages based upon the emotional pain that would "in reasonable probability" result from the injury. *Moore*, 722 S.W.2d at 688.

 In the context of Title VII, a claimant who asserts an "injury" in the form of discriminatory treatment or a hostile work environment—both of which are determined objectively—may receive compensation for emotional damages naturally flowing from that injury. A plaintiff who alleges sexual harassment must meet an objective test of harm.[3] That is, Title VII liability attaches when a reasonable person under like circumstances would have found the work environment hostile. *See Harris v. Forklift Sys., Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). Thus a sexual harassment claimant does not, by virtue of the nature of the claim itself, put her emotional state in controversy. That she alleges damages for emotional distress associated with working in a hostile environment does not of itself warrant a Rule 35(a) examination. Like the personal injury claimant who sues to recover damages for mental anguish associated with an injury, a Title VII claimant may seek compensatory damages for emotional pain, suffering, inconvenience, mental anguish, and loss of enjoyment of life. *See* 42 U.S.C. § 1981a(b) & (b)(3); *cf. Coates*, 758 S.W.2d at 752; *Bridges v. Eastman Kodak Co.*, 850 F.Supp. 216, 222 (S.D.N.Y.1994). "Rule [35] was not intended to authorize sweeping probes into a plaintiff's psychological past simply because the plaintiff has been

injured and seeks damages for mental anguish as a result of the injury." *Coates*, 758 S.W.2d at 752 (referring to analogous Texas Rule of Civil Procedure). Because this is an assessment of the pain that in reasonable probability results from discrimination, and not that which actually resulted, the defendant in such a suit is not entitled to a compelled mental examination.

The record does not support the magistrate judge's determination that Lahr's request for compensatory damages would warrant a finding that her mental condition is in controversy.[4]

### C

Lahr also objects to the magistrate judge's finding that Dr. Couch may act as an expert witness at trial, and that use of his testimony supports a finding that Lahr's mental condition is in controversy. The court need not reach this argument because Lahr's intentional infliction of emotional distress claim is sufficient to place her mental condition in controversy. And, unlike the compensatory damages issue, *see supra* at § IV(B), there is no basis that makes it advisable to decide this issue.

### V

 Having determined that the magistrate judge did not err by concluding that Lahr has placed her mental condition in controversy by alleging an action for intentional infliction of emotional distress, the court now considers whether the magistrate judge erred in ruling that F & J had demonstrated "good cause" for a mental examination.

Plaintiff objects to the magistrate judge's finding of good cause on the basis that F & J has neither exhausted its discovery nor shown that its expert cannot form an opinion

---

3. Subjective mental anguish may be relevant to a Title VII sexual harassment claim to the extent that it shows the harassment complained of "altered the conditions" of a plaintiff's employment, including her psychological well-being. Proof of such injury is not required, however, to prevail in a sexual harassment action. *Harris v. Forklift Sys., Inc.*, —— U.S. ——, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993).

4. Although there may be cases in which a tort victim who seeks compensation for emotional distress will place her mental condition in controversy, *see, e.g., Anson*, 110 F.R.D. at 186 (requiring mental examination where "the nature and seriousness of the emotional distress experienced by the plaintiff ... is an important issue"), the record does not support such a finding in the present case.

as to Lahr's condition on the basis of existing materials. The magistrate judge did not clearly err in crediting Dr. Gifford's affidavit testimony that the materials available to F & J are inadequate, and in finding there is good cause for a mental examination. The judge did not err in concluding that F & J had satisfied the good cause requirement of Rule 35(a).

## VI

### A

■ Lahr also objects to Dr. Gifford's examining her because "it has not been established that Dr. Gifford has any experience in dealing with victims of sexual harassment and discriminatory work places."

Rule 35(a) requires that a "suitably licensed or certified examiner" conduct the mental examination. The court reviews the magistrate judge's decision for clear error and abuse of discretion. Dr. Gifford holds a Ph.D. in clinical psychology from an accredited university. Her lack of expertise in the area of occupational psychology and/or sexual harassment may affect the weight to be given to her trial testimony, but does not support the conclusion that the magistrate judge clearly erred or abused her discretion in approving her as the examiner.

### B

Lahr contends that Dr. Gifford is not independent because she has had contact with F & J. The magistrate judge's finding that Dr. Gifford is suitable is not clearly erroneous, nor did the magistrate judge abuse her discretion in determining that Dr. Gifford could appropriately perform the examination.

### C

■ Plaintiff posits that the examination proposed by Dr. Gifford is unduly burdensome and intrusive. The court reviews this aspect of the magistrate judge's decision for abuse of discretion.

In determining the scope of the examination, the magistrate judge accepted Dr. Gifford's affidavit testimony that an extensive examination was necessary.[5] Lahr has not demonstrated that the magistrate judge committed clear error. Lahr's bald assertion that "[n]o allegation in this case even remotely suggests that Plaintiff should endure this kind of abusive examination" is insufficient to disturb the magistrate judge's order.

In correspondence submitted to the court, Lahr relies on *Usher v. Lakewood Eng'g & Mfg. Co.*, 158 F.R.D. 411, 414 (N.D.Ill.1994), in which the court issued a protective order against a battery of psychological tests like those at issue here. In *Usher* the plaintiff presented significant evidence refuting the reliability of the proposed tests. The court viewed the methodology of the particular examination apart from the right of the defendant to conduct a mental examination, and concluded the tests lacked validity. *Id.* at 412–13. Lahr has failed to persuade the court that the magistrate judge committed clear error or abused her discretion in determining that the tests proposed by Dr. Gifford are valid and have probative value.

## VI

On August 29, 1995 the court entered an order staying the magistrate judge's order, and providing that the stay will automatically terminate in the event the order is affirmed. Accordingly, the court having affirmed the order granting the motion to compel, the stay is vacated and Lahr shall submit to the mental examination ordered by the magistrate judge within 20 days of the date of this order or, if later, the first date that Dr. Gifford is available to conduct the examination.

**AFFIRMED.**

---

5. The magistrate judge also credited Dr. Gifford's statement that the presence of an observer during the examination would disrupt the process. While an observer has been permitted in some cases, other courts have held that the presence of another person creates an adversarial atmosphere and detracts from the purpose of Rule 35 to obtain a neutral evaluation. *See Duncan,* 155 F.R.D. at 26–27; *Tomlin,* 150 F.R.D. at 631 (noting that greater weight of authority favors exclusion of plaintiff's attorney from examination); *In re Certain Asbestos Cases,* 113 F.R.D. 612, 615 (N.D.Tex.1986) (declining to permit counsel to be present during performance of autopsy).