Michael **FURLONG**, Jr., **Plaintiff,**

v.

**CIRCLE LINE STATUE OF LIBERTY FERRY, INC., Defendant.**

No. 92 CIV. 0060 (DC).

United States District Court, S.D. New York.

Oct. 31, 1995.

Friedman Biondi & James by Bernard D. Friedman, New York City, for Plaintiff Michael Furlong, Jr.

Freehill, Hogan & Mahar by John J. Walsh, Thomas M. Canevari, New York City, for Defendant Circle Line Statue of Liberty, Inc.

## MEMORANDUM DECISION

CHIN, District Judge.

In this Jones Act case, plaintiff Michael Furlong, Jr. ("Furlong" or "plaintiff") seeks recovery for injuries sustained when his right hand was crushed by a gangway as it was brought aboard the vessel upon which he worked. Three matters are before the Court. First, defendant Circle Line Statue of Liberty Ferry, Inc. ("Circle Line") listed two potential witnesses, John Scarbrough, Ph.D. and Steve Phelan, in the Joint Pretrial Order submitted on June 14, 1995. Furlong objects to these witnesses on the grounds that they are expert witnesses and Circle Line failed to meet discovery deadlines with respect to such witnesses. Circle Line moves in limine to overrule Furlong's objections to these witnesses. Second, Circle Line seeks to amend the Joint Pretrial Order to add an exhibit and an additional witness. Third, Circle Line moves for an order pursuant to Federal Rule of Civil Procedure 35(a) directing Furlong to submit to an independent medical examination. Furlong opposes these motions.

## DISCUSSION

### I. Expert Witness Dr. Scarbrough

Circle Line seeks to call an expert economist, John Scarbrough, Ph.D. ("Scarbrough"), to rebut testimony by Furlong's expert economist, Richard Ruth, Ph.D., regarding Furlong's allegation of nearly $1,000,000 in damages. Under Judge Stanton's [1] origi-

nal scheduling order, dated March 6, 1992 (the "Original Scheduling Order"), the parties were to exchange all expert reports on or before September 1, 1992. Subsequent scheduling orders extended the discovery deadline but did not specifically mention discovery regarding expert witnesses.[2]

Circle Line identified its expert economist Scarbrough in the Joint Pretrial Order submitted June 14, 1995, but did not provide Furlong's counsel with a copy of Scarbrough's report, dated August 31, 1995, until two and one-half months later, well beyond the deadline for discovery set in the final Scheduling Order.

■ Circle Line argues that because the Original Scheduling Order was vacated by Judge Stanton on September 28, 1992, and none of the subsequent orders specifically addressed expert disclosure, there was no deadline for exchange of expert reports. This argument is specious. The fact that the later orders, which simply served to extend the discovery deadline, did not specifically address the issue of expert discovery does not mean that Circle Line's obligation to provide expert discovery was eliminated.

■ Circle Line has known since September 1994 that plaintiff intended to call an economics expert, as plaintiff produced a report from his economist at that time. Yet, Circle Line waited until submission of the Joint Pretrial Order to identify its own economist, and then it failed to produce an expert's report until two and one-half months later. Plaintiff would be prejudiced if Circle Line's expert were permitted to testify, since discovery has been complete for months and the Joint Pretrial Order was submitted in June 1995. While I could re-open discovery, this case is almost four years old and is otherwise ready for trial. Hence, it would be unfair to further delay the case because of Circle Line's failure to produce expert discovery in a timely manner. Accordingly, Circle Line may not call Dr. Scarbrough to testify.

---

1. This case was originally assigned to Judge Stanton.

2. For example, the final scheduling order issued by Judge Stanton, dated September 14, 1994, ordered that "[o]n or before December 15, 1994 discovery shall be completed."

## II. *Witness Steve Phelan*

Circle Line seeks to call Steve Phelan ("Phelan"), employed as a Port Engineer by Circle Line, to testify as a fact witness regarding the normal procedure for handling gangways on Circle Line ferry boats at the time of the accident giving rise to this dispute. Phelan has not prepared a report in this matter, and, like Scarbrough, Phelan was identified as a witness in the Joint Pretrial Order. Furlong contends that Circle Line is attempting to circumvent the expert witness disclosure requirements by calling Phelan to render expert maritime testimony under the guise of a fact witness. Circle Line asserts that Phelan will testify based upon his own observations and experience as a Circle Line employee for 37 years and that he is not being offered as an expert witness.

■ Circle Line correctly observes that the Original Scheduling Order did not address the disclosure of fact witnesses, and states that Furlong never requested such information from Circle Line in this matter. Because Furlong did not request a list of Circle Line's fact witnesses, and Circle Line identified Phelan as a witness in the Joint Pretrial Order, Circle Line may call Phelan as a fact witness, but Phelan may not render expert testimony. Phelan may only testify as to the normal procedures for handling gangways on Circle Line ferry boats. He may not give an opinion as to whether plaintiff acted negligently or carelessly. Furlong's request to depose Phelan is denied.

## III. *Motion to Add Exhibit and Witness*

■ Circle Line seeks to amend the Joint Pretrial Order to permit it to (1) offer medical records from H.S. Systems, Inc., and (2) call Arthur Morse, M.D. ("Dr. Morse") to testify regarding his examination of Furlong. The medical records, which pertain to Dr. Morse's physical examination of Furlong on March 31, 1994 in connection with Furlong's application for welfare benefits, contain drug

screen results indicating that the examinee tested positive for cocaine usage. Although the results bear Furlong's patient number, the drug test report indicates that the examinee was a female, while Furlong is a male.[3] In light of the serious doubts raised regarding the authenticity of this drug test, the medical records pertaining to that test may not be introduced absent some showing that the test is Furlong's. On the present record, plaintiff's objections to authenticity and foundation will be sustained.

Circle Line also seeks to admit other medical records from H.S. Systems and to call Dr. Morse to testify in connection with those records. Several of the forms completed by Dr. Morse in relation to his examination of Furlong refer to cocaine abuse by Furlong. For example, on plaintiff's Medical History Questionnaire, Dr. Morse wrote "Cocaine 1 wk ago—No Program." In completing a form entitled "Physician's Assessment of Client's Disability and Employability," Dr. Morse wrote that Furlong suffered from "Drug abuse-uncontrolled" and marked a box labelled "Substance Abuser." Dr. Morse noted in the Medical Findings portion of his report that the physical exam and laboratory findings were compatible with the patient's complaints; however, Dr. Morse also noted that his findings regarding the uncontrolled drug abuse were based upon information from the laboratory.

■ It is not clear from the reports whether Dr. Morse had any basis for these findings independent of the drug test, such as his own examination of Furlong or statements Furlong may have made to him. Thus, due to the lack of a showing that the drug screen results are actually Furlong's, there is an insufficient foundation for admission of the other medical records and the testimony of Dr. Morse.

Even if a proper foundation were laid, Circle Line would still have to show that the

---

**3.** Other factors call into question the integrity of this drug test, such as the apparent statement by David Sohn, M.D., the director of the laboratory where the sample was taken, that he could not vouch for its accuracy, the fact that the sample was not a forensic sample, and the fact that the sample was disposed of after two weeks, preclud-

ing re-testing. In addition, plaintiff's case worker, Eileen Alston, apparently states that although Dr. Morse referred plaintiff to drug treatment, plaintiff never actually received such treatment because the Human Resources Administration did not believe the drug test was his.

plaintiff's alleged cocaine problem is relevant to issues in the case. Circle Line claims that the H.S. Systems medical records and Dr. Morse's testimony are relevant to the issue of damages and to impeach Furlong's credibility.

■ To establish that Furlong's purported cocaine problem is relevant to the issue of damages, Circle Line must make some showing that Furlong's alleged drug use affects his ability to work. Dr. Morse's testimony and the medical records he prepared are potentially relevant to the issue of damages, for plaintiff's ability to work could be affected by his alleged cocaine habit. Evidence of a cocaine problem could tend to make it less probable that plaintiff's inability to work was caused by the injury to his hand. *See* Fed. R.Evid. 401. In assessing Furlong's employability, Dr. Morse noted his impression that plaintiff suffered from uncontrolled drug abuse, referred plaintiff to drug treatment, and determined that plaintiff was "Temporarily Disabled/Unemployable" for three months due to the drug problem. Thus, if the proper foundation is established for the H.S. Systems medical records and the testimony of Dr. Morse, evidence of Furlong's alleged drug problem could be relevant.

■ Circle Line also contends that the evidence of Furlong's cocaine use contained in the medical records and testimony of Dr. Morse is relevant to impeach Furlong's credibility should he testify at trial. It is true that drug use may be relevant to credibility, since it can affect memory and perception. *See Gordy Co. v. Mary Jane Girls, Inc.,* No. 86 Civ. 6814, 1989 WL 28477, at *6 (S.D.N.Y. Mar. 24, 1989). In this case, however, the alleged cocaine use occurred in March 1994, two and one-half years after the events giving rise to this lawsuit; therefore, it could not have affected Furlong's ability to observe and perceive those events.[4] Nor does Circle Line argue that the alleged drug use has affected Furlong's memory. In addition, Circle Line has not shown that Furlong's alleged drug use is probative of his truthfulness or untruthfulness. Thus, evidence of plaintiff's alleged drug use may not be used for impeachment purposes.

In sum, Circle Line may not add to the Joint Pretrial Order the report of the drug screen results or any medical reports based on those results. It may, subject to the laying of a proper foundation (which must be done outside the presence of a jury), add the H.S. Systems medical records and call Dr. Morse for the purpose of showing that Furlong's purported drug problem affected his ability to return to work.

## IV. *Motion for Medical Examination Pursuant to Rule 35(a)*

■ Circle Line moves for an order directing Furlong to submit to an independent medical examination pursuant to Fed. R.Civ.P. 35(a).[5] Under Rule 35(a), the party seeking a physical examination must show that the physical condition of the party sought to be examined is "in controversy" and must establish good cause for such an examination. Fed.R.Civ.P. 35(a); *Schlagenhauf v. Holder,* 379 U.S. 104, 117–18, 85 S.Ct. 234, 242–43, 13 L.Ed.2d 152 (1964) (good cause requisite is "not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require[s] an affirmative showing by the movant ... that good cause exists for ordering each particular examination."). In this case the parties do not dispute that Furlong's physical condition is in controversy, because he brought suit to recover damages for injuries to his hand. Furlong objects to an independent medical examination on the grounds that he has already undergone two such medical examinations and that Circle Line has not shown sufficient cause to warrant a third medical examination.

---

**4.** There has been no suggestion that Furlong was using cocaine at the time of the accident.

**5.** Rule 35(a) provides:
When the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination by a suitably licensed or certified examiner.... The order may be made only on motion for good cause shown and upon notice to the person to be examined and to all parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made.

 Although a court may order multiple physical examinations, a higher showing of cause is required to justify subsequent examinations. *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure* § 2234, at 475 (2d ed.1994). Circle Line contends that it has demonstrated good cause for a third medical examination, because its medical expert, Martin S. Posner, M.D. ("Dr. Posner"),[6] last examined Furlong on behalf of Circle Line on August 25, 1994. According to Circle Line, an additional examination is necessary to monitor the progression of an unrelated hand condition suffered by Furlong, Dupuytren's Contracture, which is relevant to the issue of damages. Furlong argues that this condition has been present since January 1993, and that, because Dr. Posner has examined Furlong twice since then, he should not be permitted to perform a third examination.

 Although there is no time limit in which to make a motion pursuant to Rule 35(a), Wright et al., *supra*, § 2234, at 474, the Court notes that Circle Line did not make the present motion for a third medical examination until September 1, 1995, although it became aware of Furlong's Dupuytren's Contracture in January 1993. Circle Line argues that the Dupuytren's Contracture was not an issue in the case at the time Furlong was last examined by Dr. Posner, because, after mentioning the condition in a January 15, 1993 letter, Dr. Lenzo did not discuss it again until April 13, 1995. This does not explain Dr. Posner's failure to obtain information about the condition during his earlier examinations, nor does it explain Circle Line's failure to request a third examination until well after the Joint Pretrial Order was submitted. Circle Line had two months from Dr. Lenzo's April 13, 1995 correspondence until the Joint Pretrial Order was submitted on June 14, 1995 in which to make such a motion. Because Circle Line's doctor has already performed two physical examinations of Furlong in connection with this case, and Circle Line has not shown good cause for a third examination, the motion is denied.

SO ORDERED.

---

**6.** Dr. Posner originally treated Furlong for the injury to his right hand. Furlong later sought treatment from Salvatore R. Lenzo, M.D. ("Dr. Lenzo"), and discontinued treatment with Dr. Posner. Circle Line subsequently retained Dr. Posner as a medical expert in this matter.