Gerardo DIAZ, et al., Plaintiffs,

v.

CON–WAY TRUCKLOAD, INC.,
et al., Defendants.

Civil Action No. L–11–009.

United States District Court,
S.D. Texas,
Laredo Division.

Jan. 6, 2012.

**414**

Fidel Rodriguez, Jr., Attorney at Law, San Antonio, TX, for Plaintiffs.

Larry Dale Warren, Naman Howell Smith & Lee, PLLC, San Antonio, TX, for Defendants.

### MEMORANDUM & ORDER

J. SCOTT HACKER, United States Magistrate Judge.

Pending before the Court were the following four motions: (1) "Defendant, Con–Way Truckload, Inc.'s, Opposed Motion to Compel Gerardo Diaz to a Medical Examination to be Performed by Dr. Richard Evans" (Dkt. No. 18) filed on August 22, 2011; (2) "Defendant's Con–Way Truckload, Inc.'s Opposed Motion to Compel Gerardo Diaz to a Neuropsyc[h]ological Medical Examination to be Performed by Dr. Francisco Perez" (Dkt. No. 19) filed on August 24, 2011; (3) Defendant's "Motion for Leave to File Reply in Excess of Page Limits" (Dkt. No. 22) filed on September 12, 2011; and (4) "Plaintiff Gerardo Diaz' Opposed Motion for Leave to Designate Dr. R. Braden Neiman as an Expert" (Dkt. No. 25) filed on October 17, 2011.

In its motions, Defendant Con–Way Truckload, Inc. ("Defendant Con–Way") sought an order from this Court compelling Plaintiff Gerardo Diaz ("Mr. Diaz") to submit to medical examinations to be conducted by an ophthalmologist and a neuropsychologist. (See Dkt. Nos. 18 and 19). Mr. Diaz filed his responses to the motions to compel on September 7, 2011. (Dkt. Nos. 20 and 21). Defendant Con–Way filed its reply in support of

the motions to compel on September 12, 2011. (Dkt. No. 23). In his motion, Mr. Diaz sought leave to designate Dr. R. Braden Neiman as a non-retained expert after his expert designation deadline. (*See* Dkt. No. 25). Defendant Con–Way filed a response to Mr. Diaz's motion on October 21, 2011. (Dkt. No. 28). The Court held hearings on the motions on October 7, 2011, and on October 26, 2011. On October 28, 2011, the Court issued an Order granting Defendant Con–Way's motions to compel (Dkt. Nos. 18 and 19), granting Plaintiff Gerardo Diaz's motion for leave to designate an expert (Dkt. No. 25), and denying Defendant Con–Way's motion for leave to file reply (Dkt. No. 22) as moot. (*See* Dkt. No. 29). The Court further advised the parties that a memorandum opinion would follow. (*Id.*).

## I. BACKGROUND

Mr. Diaz's complaint alleges claims of negligence and negligence *per se* against Defendant Con–Way for injuries arising out of a motor vehicle collision between Mr. Diaz and Defendant Yaw Owusu ("Defendant Owusu"), one of Defendant Con–Way's drivers. (*See* Dkt. No. 16, pp. 3–4). Specifically, Mr. Diaz pleads damages for pain and suffering, mental anguish and emotional distress, hospital and medical expenses, disfigurement, physical impairment, loss of earnings, and loss of future earning capacity. (*Id.* at p. 5).

The vehicular collision giving rise to Mr. Diaz's causes of action occurred on February 3, 2010. (*Id.* at p. 2). According to Mr. Diaz, he was traveling southbound on Interstate Highway 35, approximately 30 miles north of Laredo, Texas, while Defendant Owusu was traveling in the opposite direction. (*Id.*). Mr. Diaz further alleges that "[s]uddenly and without warning, [Defendant Owusu] veered across the center median and into the path of [Mr. Diaz's] tractor-trailer causing a severe collision and serious and critical injuries to [Mr. Diaz]." (*Id.*). As a result of Mr. Diaz's alleged injuries, Mr. Diaz claims it was necessary for him "to undergo emergency medical treatment and be hospitalized." (*Id.* at p. 4). Mr. Diaz further claims that he "has suffered, now suffers, and with reasonable probability will suffer for the remainder of his life, significant physical and mental pain, significant physical and mental impairment, which has and continues to adversely affect his enjoyment of life, his ability to care for himself or his family, and his ability to work and earn a living." (*Id.*).

Mr. Diaz filed this lawsuit against Defendant Con–Way and Defendant Owusu on December 27, 2010, in the 111th Judicial District of Webb County, Texas. (*See* Dkt. No. 1, Ex. 1, p. 3). On February 1, 2011, Defendants removed the case to federal court. (*See* Dkt. No. 1). On April 8, 2011, the Court issued a scheduling order with the following deadlines in this case:

| PRETRIAL EVENTS | DEADLINES |
| --- | --- |
| Rule 26(a)(1) initial disclosures | April 7, 2011 |
| Deadline for joinder of all parties | April 14, 2011 |
| Deadline for plaintiff to designate expert witnesses & reports | July 7, 2011 |
| Deadline for defendant to designate expert witnesses & reports | August 8, 2011 |
| Discovery deadline | October 11, 2011 |
| Deadline to complete ADR | October 25, 2011 |
| Deadline to amend pleadings (with parties consent or leave of Court) | November 14, 2011 |
| Deadline to file contested motions | November 28, 2011 |
| Deadline to file joint pretrial order, motions in limine & proposed jury instructions (or proposed findings of fact & conclusions of law) | January 17, 2012 |
| Pretrial conference & trial scheduling in Courtroom 3B with United States District Judge Micaela Alvarez. | January 31, 2012 at 10:00 a.m. |

(*See* Dkt. No. 12). On July 13, 2011, Mr. Diaz filed his First Amended Complaint and joined his wife and children as additional plaintiffs to the lawsuit. (*See* Dkt. No. 16). Defendants have stipulated to liability for the accident. (*Id.* at p. 3 n. 1; October 7, 2011 Motions Hearing). Consequently, at the trial of this matter, the sole issue will be what injuries or damages were caused by the accident and what monetary amount will fairly compensate all plaintiffs for Mr. Diaz's injuries.

## II. DISCUSSION

### A. Defendant Con–Way's Motions to Compel Mr. Diaz's Physical Examinations Pursuant to Federal Rule of Civil Procedure 35 Are Untimely

In response to Defendant Con–Way's motions, Mr. Diaz argued that Defendant Con–Way demonstrated a lack of diligence by seeking a Rule 35 examination after the deadline to designate experts and produce reports established under Federal Rule of Civil Procedure 26. (*See* Dkt. Nos. 20 and 21). According to Defendant Con–Way, however, "there is no deadline, either in the Rule or the case law for the filing of a motion under Rule 35(a)." (*See* Dkt. No. 23, ¶ 9). Relying on *Waggoner v. Ohio Cent. R.R., Inc.*, Defendant Con–Way further argued that the fact that the request for the Rule 35 examination was made after the expert report deadline is not determinative and that a request for such an examination can occur at anytime before the discovery deadline in the case. 242 F.R.D. 413 (S.D.Ohio 2007); (*see* Dkt. No. 23, ¶¶ 9 and 10). Thus, the Court must first determine if there is any relationship between the timing of a request for a Rule 35 examination and the Rule 26 deadline to designate experts and produce expert reports. In other words, if a relationship exists between Rule 35 and Rule 26 that requires the opposing party to seek a Rule 35 examination before the Rule 26 deadline to designate experts and produce related reports, then Defendant Con–Way's motions to compel are untimely.

As an initial matter, the Court notes that the applicable Federal Rules do not answer this question directly. On the one hand,

Rule 26(a)(2), pursuant to which the Court established expert witness disclosure deadlines, provides that a witness "who is retained or specially employed to provide expert testimony in the case" is required to provide a report "at the times and in the sequence directed by the Court." On the other hand, as Defendant Con–Way noted, Rule 35 fails to provide a deadline by which a Rule 35 examination must be conducted or when a report from such an examination must be provided. Rather, Rule 35(b)(1) merely states that the examiner shall provide a report to the opposing party "on request" made "by the party against whom the examination order was issued or by the person examined."

### 1. There Is Disagreement Among District Courts on Whether Rules 26 and 35 Should Be Applied Independently of Each Other or Read in Conjunction with One Another

Notably, neither party directly addressed that there is varying treatment among the district courts on the relationship between the Rule 26 expert disclosure deadline and the timing for a Rule 35 examination and report. The few courts that have addressed the interplay between Rules 26 and 35 address the issue in an inconsistent manner. Some district courts assert that Rule 26 and Rule 35 operate completely independent of each other. For example, the *Waggoner* court held that the deadline for disclosure of expert witness reports did not apply to defendant's issuance of a Rule 35 report. *Waggoner,* 242 F.R.D. at 414. However, the *Waggoner* court did not specifically address the proper timing for filing a motion to compel a Rule 35 examination or for conducting the examination itself. *Id.* Adopting the *Waggoner* approach, the *Bush* court later concluded that the deadline set forth in the scheduling order for expert reports under Rule 26(a)(2) does not apply to a Rule 35 examination or the issuance of a Rule 35 report. *Bush v. Pioneer Human Serv.,* 2010 WL 324432, at *5 (W.D.Wash. Jan. 21, 2010).

In contrast, other district courts have considered the Rule 26 deadline when determining the proper timing of a Rule 35 examina-

tion and its related report. For instance, district courts in Florida have unequivocally stated that although Rule 35 does not prescribe a time limit for the filing of a motion for physical or mental examinations, Rule 35 must be read in conjunction with Rule 26(a)(2) and the court order governing pretrial procedures. *See, e.g., Roberson v. Church,* 2009 WL 4348692, at *1 (M.D.Fla. Nov. 24, 2009); *Lamour v. Applied Credit Sys., Inc.,* 2003 WL 25537162, at *2 (S.D.Fla. Aug. 5, 2003). In addressing the proper timing of a Rule 35 examination, the *Minnard* court rejected "defendant's assertion that an expert may routinely testify to matter discovered in a Rule 35 examination, regardless of the expert provisions in a scheduling order, so long as the exam is taken prior to the discovery cutoff." *Minnard v. Rotech Healthcare Inc.,* 2008 WL 150502, at *3 (E.D.Cal. Jan. 15, 2008). With respect to the proper time limit for producing a Rule 35 report, the *Shumaker* court held that if a Rule 35 examining physician is intended to be called as a witness at trial, the Rule 35 report must be produced at the time established for other Rule 26(a)(2) disclosures. *Shumaker v. West,* 196 F.R.D. 454, 456 (S.D.W.Va.2000).

Alternatively, district courts within the Fifth Circuit have not addressed the issue directly, but a few have implied that Rule 35 examinations are subject to the Rule 26 deadline for expert designation and reports. In *Kador,* the court stated that defendants' request for a Rule 35 examination was timely because the request was made before the court-ordered deadline to designate experts. *See Kador v. City of New Roads,* 2010 WL 2133889, at *4 n. 1, n. 5 (M.D.La. May 27, 2010). The *Kador* court concluded that the deadline to designate experts would have to be extended as a result of the court's order requiring defendants to resubmit their request for a Rule 35 examination. *Id.* In *Evans,* the court considered defendant's des-

ignation of a Rule 35 examiner as timely to the extent that the court's order granting defendant's motion to compel a Rule 35 examination of plaintiff had delayed defendant in providing plaintiff with its completed expert witness list by the court-ordered expert designation deadline. *Evans v. Noble Drilling Co.,* 2007 WL 2818001, at *3 (S.D.Tex. Sept. 25, 2007).

### 2. The Reasoning Behind Waggoner's (and its Supporters') Conclusion that Rules 26 and 35 Should Be Applied Independently of Each Other

The first opinion to recognize a potential disparity among courts on the proper relationship between Rules 26 and 35, and the most cited opinion in this area, involved a defendant who sought to extend the expert report deadline in order to have a Rule 35 examination conducted on the plaintiff.[1] *Waggoner,* 242 F.R.D. at 413. Although the defendant had previously disclosed the examining physician as an expert, the request for the examination and the report were not completed prior to the expiration of the expert disclosure and report deadline. *Id.* at 414. According to the *Waggoner* court, the issue before it was whether the defendant was "required to have any Rule 35 examination conducted, and any report of such examination issued, prior to the expert witness disclosure deadline." *Id.* at 413. However, because the parties had already agreed to go forward with the Rule 35 examination, the specific issue before the court was whether the defendant needed an extension of the Rule 26 expert disclosure deadline to disclose the Rule 35 report. *Id.* at 414. In making its determination, the court pointed to the differences in the content requirements of the Rule 26 expert report and the Rule 35 report, the differing requirements to disclose the reports, and the difference in how the respective reports are used. *Id.* Specifically, the *Waggoner* court reasoned:

---

1. Prior to *Waggoner,* there were other opinions addressing the proper deadline for a Rule 35 motion. *See, e.g., Eckman v. Univ. of R.I.,* 160 F.R.D. 431, 432 (D.R.I.1995) (holding that notice and request for Rule 35 examination filed three days before the expiration of discovery were timely filed because they were filed within the time permitted for discovery and plaintiff could

have sought a continuance or protective order from the court but did not); *Furlong v. Circle Line Statue of Liberty Ferry,* 902 F.Supp. 65, 70 (S.D.N.Y.1995) (stating that there is no time limit in which to make a motion pursuant to Rule 35(a)). However, those cases did not address the specific issue before this Court (*i.e.,* the relationship between Rules 26 and 35).

At the time a party requests a Rule 35 examination, it is not necessarily the case that the examining physician will be called to testify at trial. Often, the results of the examination simply confirm what the injured party's doctors have reported, and the Rule 35 examiner therefore serves only as a consultant to the defending party and not as a trial witness. Although parties could conceivably schedule Rule 35 examinations far enough in advance of the Rule 26(a)(2) deadline so that, if the examiner were then to be used as a witness at trial, the Rule 35 report could be prepared by the deadline, that ignores the fact that a Rule 35 report is to be prepared and issued only if requested by the party who is examined. To interpret Rule 26(a)(2) to require a mandatory issuance of the report would contradict the plain language of Rule 35.

*Id.* Consequently, the *Waggoner* court expressly held that "Rule 35 examinations, and the issuance of reports following those examinations, proceed independently of Rule 26(a)(2)," and the deadline for disclosure of expert witness reports did not apply to defendant's issuance of the Rule 35 report. *Id.* at 414 (citing *Furlong v. Circle Line Statue of Liberty Ferry, Inc.*, 902 F.Supp. 65 (S.D.N.Y.1995)).

### 3. The Reasoning Behind this Court's Conclusion that Rules 26 and 35 Should Be Read in Conjunction with One Another and Why Defendant Con–Way's Motions Are Untimely

■ For the reasons set forth below, the Court concludes that Rules 26 and 35 should be read in conjunction with one another when determining the proper timing for a Rule 35 examination and the subsequent disclosure of the related report. First, the Rule 35 examination is a discovery tool not unlike depositions under Rules 30 and 31, Rule 33 interrogatories, or Rule 34 requests for production. *See Briesacher v. AMG Res., Inc.*, 2005 WL 2105908, at *1 (N.D.Ind. Aug. 31, 2005) (citing *Schlagenhauf v. Holder*, 379 U.S. 104, 117, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)). Similar to Rule 35, Rules 30, 31, 33, and 34 do not provide a specific deadline by which to submit these discovery requests because it is understood that *all* discovery tools are generally subject to the overall discovery deadline. However, when a party relies on the discovery tools described in Rules 30, 31, 33, and 34 to obtain "the facts or data [that will be] considered by the [expert] witness in forming [the expert's opinion]," *see* FED.R.CIV.P. 26(a)(2)(B), the party is usually cognizant of the need to complete this discovery sufficiently in advance of the Rule 26 expert report deadline. A Rule 35 examination should be no different than any other discovery tool that a party would use to obtain evidence to be considered by its testifying experts in forming their opinions and creating the related reports. Likewise, if a Rule 35 examination truly does not implicate the report or testimony of a testifying expert, then it can be scheduled after the Rule 26 expert report deadline—just like depositions under Rules 30 and 31, Rule 33 interrogatories, or Rule 34 requests for production.

Second, the *Waggoner* court and its supporters fail to take into account the domino-effect that a belated Rule 35 examination and report could have on the subsequent deadlines established by a court's scheduling order. For example, in the instant case, Defendant Con–Way's timing of its requests resulted in an additional discovery dispute, an additional expert designation, additional expert depositions, and likely, additional disclosures in the parties' expert reports. As a result, this Court had to modify its scheduling order by extending all remaining deadlines, including the pretrial conference and trial scheduling date by eight weeks.

Third, the Court is not persuaded by the *Waggoner* court's contention that reading Rule 26 and Rule 35 in conjunction with one another requires "a mandatory issuance of the [Rule 35] report," which would contradict the plain language of Rule 35. Rather, it only potentially affects the timing of the issuance of that report. That is, the disclosure of the Rule 35 report may have to occur by the Rule 26(a)(2) deadline if, in fact, the Rule 35 report is requested by opposing counsel and the substance of the Rule 35 examination is material to the facts, considerations, and opinions of the testifying expert.

■ Finally, contrary to the *Waggoner* court's assertion that "the results of the examination [often] simply confirm what the injured party's doctors have reported," it seems more likely that a party will attempt to use the results of the examination as an opportunity to obtain additional discovery to bolster their testifying expert's opinion. Specifically, one of the purposes in granting a Rule 35 request is to "preserve the equal footing of the parties to evaluate the plaintiff's [physical or mental condition]...." *Shadix–Marasco*, 2011 WL 2011483, at *3 (quoting *Duncan*, 155 F.R.D. at 25); *see also Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 608 (C.D.Cal.1995) ("One of the purposes of Rule 35 is to 'level the playing field' between parties in cases in which a party's physical or mental condition is in issue."). The Court notes that this is an adversarial process, and "the purpose of a retained expert is to advocate within reasonable grounds on behalf of the person for whom retained." *Minnard*, 2008 WL 150502, at *2. As stated by *Minnard*, it is highly unlikely that a retained expert will "simply be parroting the facts of [a previous] examination." *Id.* Consequently, any perceived independent operation of Rules 26 and 35 seems to fade "where the Rule 35 examination request ... is initiated for the purpose of providing expert testimony at trial...." *Perez v. Viens II*, 2011 WL 855673, at *3 (D.Neb. Mar. 8, 2011).

■ Here, it is clear to the Court that Defendant Con–Way is not merely expecting its examining experts to confirm the facts and information provided in Mr. Diaz's expert reports. Rather, Defendant Con–Way's primary purpose for having its already-designated experts conduct Rule 35 examinations is to ensure that it is on "equal footing" with Mr. Diaz and his retained experts. Specifically, Defendant Con–Way is seeking to determine whether there has been a change in Mr. Diaz's physical or mental condition and to develop evidence of any changes favorable to Defendant Con–Way in order to support Defendant Con–Way's overall position or attack the position of Mr. Diaz's expert. *See Minnard*, 2008 WL 150502, at *2.

The fact that Defendant Con–Way has acknowledged that it *may* need to supplement the expert reports is telling of its expectation that it may benefit from conducting the Rule 35 examination. Indeed, Defendant Con–Way's neuropsychological expert's report twice indicated that his report was merely a "preliminary opinion." (*See* Dkt. No. 19, Ex. C). He further requested to review additional records and to "personally conduct a detailed neuropsychological assessment of Mr. Diaz." (*Id.*). Moreover, in support of its motion to compel a neuropsychological examination of Mr. Diaz, Defendant Con–Way attached an affidavit from its neuropsychological examiner addressing the proposed scope of the independent examination. (*See* Dkt. No. 23, Ex. C). Specifically, the examiner provided a list of twenty-seven potential tests to be administered, and estimated that only ten of those tests would be administered in the allotted eight-hour period. (*Id.*). However, if Defendant Con–Way were genuinely interested in merely "confirming" data, Defendant Con–Way would have asked its examiner to conduct the exact same or comparable examinations that had already been conducted on Mr. Diaz by his own neuropsychologist.

In addition, Defendant Con–Way asserted that Mr. Diaz's condition may have changed in that he had been driving throughout San Antonio despite Mr. Diaz's eye expert's medical opinion that his eyesight prevents him from driving and working. (*See* Dkt. No. 23, ¶ 5). Thus, it is apparent that the Rule 35 examinations were not requested merely to confirm what Mr. Diaz's examining physicians had already reported, but to scrutinize Mr. Diaz's alleged physical and mental changes and to bolster the "preliminary opinion" of Defendant Con–Way's neuropsychological expert.

As such, after considering the language, purpose, and relevant use of Rules 26 and 35, the Court is of the opinion that Rules 26 and 35 should be read in conjunction with each other when determining the proper timing for a Rule 35 examination and report.[2] Giv-

---

2. The Court generally recognizes that there is some support for the proposition that Rules 26

and 35 are separate and exclusive. First, the contents of a report generated pursuant to Rule

en the circumstances, Defendant Con–Way was on notice before it designated its experts and produced their respective reports that the Rule 35 examinations of Mr. Diaz would likely have an impact on Defendant Con–Way's disclosure obligations under Rule 26.[3] Consequently, because Defendant Con–Way showed a lack of diligence by seeking a Rule 35 examination after the Rule 26 deadline to designate experts and produce reports, the Court considered Defendant Con–Way's requests for Rule 35 examinations as untimely.

### B. Defendant Con–Way's Argument that it Can Supplement any Time before the Close of Discovery Is Misguided

In its reply, Defendant Con–Way asserted that Mr. Diaz's arguments of an untimely Rule 35 examination request should be rejected because "Rule 26(a)(2) specifically allows for the filing of supplemental reports by experts within the discovery period." (*See* Dkt. No. 23, ¶ 11). In essence, Defendant

35 are not identical to the contents of the expert report required by Rule 26(a)(2). For example, the contents of a Rule 35 examiner's report "must set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests." FED.R.CIV.P. 35(b)(2). In contrast, a Rule 26 expert report "must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case." FED.R.CIV.P. 26(a)(2)(B). Second, the reports have a common purpose in that each report is a mechanism used to level the playing field for the parties. For example, one of the purposes in granting an independent medical examination is to "preserve the equal footing of the parties to evaluate the plaintiff's [physical or mental condition]...." *Shadix–Marasco v. Austin Reg'l Clinic P.A.*, 2011 WL 2011483, at *3 (W.D.Tex. May 20, 2011) (quoting *Duncan v. Upjohn Co.*, 155 F.R.D. 23, 25 (D.Conn.1994)). Similarly, a purpose of a Rule 26 expert report is to prevent an ambush at trial by notifying opposing parties of the scope and content of the expert's proposed testimony to allow the opposing party to effectively cross-examine the expert and designate a rebuttal expert. *Matthews v. Allstate Ins. Co.*, 731 F.Supp.2d 552, 559 (E.D.La.2010);

Con–Way argued that it is free to supplement its expert reports anytime within the discovery period.

The Court begins by noting that the cases cited by Defendant Con–Way for the proposition that supplementation of expert reports is permissible at any time within the discovery period are inapplicable. For example, in *Cedar Petrochemicals*, the court specifically stated that the report was not a "supplemental" report under Rule 26 because it did "not rely on previously unknown information." *Cedar Petrochemicals, Inc. v. Dongbu Hannong Chem. Co., Ltd.*, 769 F.Supp.2d 269, 277–78 (S.D.N.Y.2011). Nonetheless, after weighing the factors for the "extreme sanction of preclusion" of an expert report, the court ultimately allowed the supplemental submission because it was "harmless." *Id.* at 278. In *Eugene Baratto*, the court did admit a part of the expert's affidavit submitted after the expert report filing deadline, but before the general discovery deadline. *Eu-*

*Bro–Tech v. Purity Water Co. of San Antonio, Inc.*, 2009 WL 1748539, at *7 (W.D.Tex. June 19, 2009). However, in contrast to a Rule 35 report, a detailed and complete report under Rule 26 has an additional purpose of minimizing the expense of deposing experts, and to shorten direct examination. *See Ortiz–Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir.2001). Third, "Rule 26(a)(2) applies to witnesses who are specially retained to provide expert testimony in the case, while Rule 35 permits the Court to order a party to submit to a mental or physical examination whether or not the examiner was previously retained to provide expert testimony." *Bush*, 2010 WL 324432, at *5. Nonetheless, for the reasons discussed above, the Court is not persuaded that Rules 26 and 35 are completely independent of one another.

3. The Court concedes that there may be circumstances when a Rule 35 examination after the expert report deadline and discovery deadline may be warranted. However, such circumstances would likely occur when there has been a "good cause" showing for the examination made under Rule 35 to warrant the examination at that time, not because Rules 26 and 35 are read independently of one another. *See, e.g., Sadler v. Acker*, 263 F.R.D. 333 (M.D.La.2009) (holding that defendants established good cause to justify examination before trial when defendants' experts had examined plaintiff a substantial time before trial, and the passage of time warranted a second examination).

*gene Baratto, Textures, LLC v. Brushstrokes Fine Art, Inc.,* 701 F.Supp.2d 1068, 1072 (W.D.Wis.2010). However, the court admitted these statements because they merely "resolve[d] confusion over how many products [the expert] tested and how many samples he removed from each product" and did "not enlarge the scope of his original report or introduce a new opinion." *Id.* While the *Eugene Baratto* court noted that the affidavit was submitted before the "general discovery cutoff," it does not appear that it was of significance in the court's ultimate determination.

Importantly, the Rule 26(a)(2) expert report must include, among other things, "a *complete* statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming [the expert witness's opinion]." (emphasis added). Pursuant to Rules 26(a)(3) and (e)(2), supplementation of an expert report is permitted. Furthermore, any supplements to the expert report must be disclosed at least thirty days before trial "[u]nless the court orders otherwise." FED.R.CIV.P. 26(a)(3). In its scheduling order, this Court does not specifically provide a deadline for supplementing an expert report. As such, the parties can supplement up until thirty days before trial, "unless the court orders otherwise" after the issuance of its scheduling order.

■ Here, Defendant Con–Way ignores the real issue by assuming that the substance of the Rule 35 examinations would be within the scope of permissible supplementation. Permissible supplementation of an expert report and disclosures can only occur *in certain limited circumstances.* See Cook v. Rockwell Int'l Corp.,* 580 F.Supp.2d 1071, 1169 (D.Colo.2006). Specifically, "[t]hose circumstances are when the party or expert learns the information previously disclosed is incomplete or incorrect in some material respect." *Id.* (citing FED.R.CIV.P. 26(e); *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 953–54 (10th Cir.2002)). Moreover, permissible supplementation "means correcting inaccuracies, or filling the interstices of an incomplete report based on information *that was not available at the time of the initial disclosure.*" *Id.* (quoting *Keener v. United*

*States,* 181 F.R.D. 639, 640 (D.Mont.1998)) (emphasis added); *see Cedar Petrochemicals,* 769 F.Supp.2d at 277–78 ("If an expert's report 'does not rely [on] any information that was previously unknown or unavailable to him,' it is not an appropriate supplemental report. . . ."); *In re Cessna 208 Series Aircraft Products Liab. Litig.,* 2008 WL 4937651, at *2 (D.Kan. Nov. 17, 2008) (quoting *Cook,* 580 F.Supp.2d at 1161); *see also Minebea Co., Ltd. v. Papst,* 231 F.R.D. 3, 6 (D.D.C.2005) (Rule 26(e)(1) "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report."). The basic purpose of supplementary disclosures under Rule 26(e)(2) is to "prevent[ ] prejudice or surprise," *Hernandez v. Swift Transp. Co., Inc.,* 2010 WL 2545597, at *1 (W.D.Tex. June 22, 2010) (citing *Reed v. Iowa Marine & Repair Corp.,* 16 F.3d 82, 85 (5th Cir.1994)), not "to provide an extension of the expert designation and report production deadline." *Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* 145 F.3d 320, 324 (5th Cir.1998).

■ Defendant Con–Way's assertion that supplementation is proper at any time before the end of the discovery period may be correct if the Court determines that the facts obtained and any opinions stemming from a Rule 35 examination were "not available at the time of the initial disclosure." Under the circumstances of this case, the Court does not believe that Defendant Con–Way's lack of diligence in seeking a Rule 35 examination would make the information obtained from such an examination "unavailable" at the time Defendant Con–Way initially disclosed its expert reports. Put simply, because it was Defendant Con–Way's own decision to examine Mr. Diaz after Defendant Con–Way disclosed its expert reports, the Court anticipates that it would be difficult for Defendant Con–Way to demonstrate that the Rule 35 examination would be a proper basis for supplementation.

### C. Defendant Con–Way's Request to Amend the Scheduling–Order Deadlines and Mr. Diaz's Motion for Leave to Designate Expert

If Defendant Con–Way would like to include the findings of any Rule 35 examina-

tions in its expert reports, Defendant Con–Way would have to pursue an alternative to supplementation. Under the circumstances, that alternative would be for Defendant Con–Way to seek an extension of its expert report deadline and establish "good cause" to modify the Court's scheduling order pursuant to Federal Rule of Civil Procedure 16. In anticipation of an "untimeliness" ruling from the Court, Defendant Con–Way requested an order from the Court amending the scheduling-order deadlines relating to the completion of discovery. (*See* Dkt. No. 23, p. 8). However, Defendant Con–Way did not specifically request an extension of its expert designation deadline. Nonetheless, in light of the likely effect a Rule 35 examination will have on Defendant Con–Way's expert reports, the Court will construe Defendant Con–Way's requests to conduct the Rule 35 examinations by its already-designated expert witnesses as a request to extend the expert report deadline.

In addition, Mr. Diaz sought leave to designate a nonretained expert witness, Dr. R. Braden Neiman, after his expert designation deadline of July 7, 2011. According to Mr. Diaz, he was referred to Dr. Neiman for a neurologic evaluation by his current treating physician. (*See* Dkt. No. 25). Dr. Neiman examined Mr. Diaz on September 13, 2011. (*Id.*). Thereafter, Mr. Diaz's counsel e-mailed Defendant Con–Way the report created by Dr. Neiman the day after receiving the report on September 23, 2011. (*Id.*). According to Mr. Diaz's counsel, he would have filed the motion for leave at an earlier date if it had not been for the fire that occurred at Plaintiffs' counsel's offices. (*Id.*). According to Defendant Con–Way, it only "objects to [Mr. Diaz's] request to the extent that Defendant Con–Way is not allowed to complete the discovery it has been requesting since early August." (Dkt. No. 28, p. 3). Defendant Con–Way is "more than willing to allow the late designation of Dr. Neiman provided Defendants are allowed to conduct the requested [Rule 35] medical examination." (*Id.*).

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent." In the context of an untimely motion to amend a scheduling order's deadlines for the designation of experts and to file expert reports, the Fifth Circuit Court of Appeals applies a four-factor balancing test to determine whether good cause exists: (1) the explanation for the failure to adhere to the deadline; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice in allowing the testimony or the supplement; and (4) the availability of a continuance to cure such prejudice. *See Geiserman v. MacDonald*, 893 F.2d 787, 791 (5th Cir.1990).

Neither party provided compelling explanations for their failure to adhere to the Court-ordered deadlines. Moreover, the importance of allowing the testimony for each party appeared to be of equal weight in that both sought to expound on their current expert testimony in light of the potential changes in Mr. Diaz's medical condition. The importance of each party's expert's testimony became apparent when the Court considered that Mr. Diaz had not been examined by either an ophthalmologist or neurologist in months. The importance of the experts' testimony was further emphasized by the fact that damages will be the sole issue at trial. Finally, any potential prejudice in allowing the testimony could be cured by a Court-continuance. As such, after balancing the above-referenced factors, the Court found good cause to grant Defendant Con–Way's request to extend the expert designation and discovery deadlines and to grant Mr. Diaz's request to extend the expert designation deadline to allow him to designate Dr. Neiman.[4]

### D. The Merits of Defendant Con–Way's Rule 35 Motions

Pursuant to Rule 35(a), the Court may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suit-

---

4. The Court notes that the uncertainty in the case law on the proper deadlines for requesting and conducting a Rule 35 examination and issuing the report further supports the Court's finding of "good cause" to extend the deadlines for both parties.

ably licensed or certified examiner when the party's mental or physical condition is in controversy. Such an order may be made "only on motion for good cause and on notice to all parties and the person to be examined." FED.R.CIV.P. 35(a)(2). District courts in the Fifth Circuit have held that Rule 35(a) should be construed liberally in favor of granting discovery. *See Phoenix Int'l Holdings, Inc. v. Bjorklund,* 2009 WL 3378606, at *1 (E.D.La. Oct. 14, 2009) ("[T]his Court is normally inclined to grant [a Rule 35] examination."); *York v. Union Pac. R.R. Co.,* 2008 WL 5056847, at *2 (E.D.Tex. Jan. 11, 2008); *Evans,* 2007 WL 2818001, at *2; *Lahr v. Fulbright & Jaworski, L.L.P.,* 164 F.R.D. 204, 207 n. 1 (N.D.Tex.1996).

■ The United States Supreme Court has stated that the "in controversy" and "good cause" requirements cannot be met by "mere conclusory allegations of the pleadings," nor by "mere relevance to the case." *Schlagenhauf,* 379 U.S. at 118–19, 85 S.Ct. 234. Specifically, Rule 35(a) requires "an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Id.* at 118, 85 S.Ct. 234. Furthermore, "[t]he ability of the movant to obtain the desired information by other means is also relevant" to the "good cause" determination. *Id.* The Supreme Court further acknowledged that, "there are situations where the pleadings alone are sufficient to meet these requirements." *Id.* at 119, 85 S.Ct. 234. For example, "[a] plaintiff in a negligence action who asserts mental or physical injury, places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of the asserted injury." *Id.*

■ Moreover, a motion for a Rule 35 independent examination should be denied "[o]nly if no additional relevant information could be gained by an examination". *See Duncan,* 155 F.R.D. at 25 (citing *Schlagenhauf,* 379 U.S. at 118, 85 S.Ct. 234). A

change in medical condition is also relevant to determining whether a Rule 35 examination is warranted. *See Phoenix Int'l Holdings,* 2009 WL 3378606, at *2 (denying a Rule 35 examination, in part, because there was no indication that defendant's medical condition had changed since he was last treated). In addition, courts have found good cause to exist where the plaintiff plans to prove his or her claim at trial through the testimony of his or her own expert witness. *See Shadix–Marasco,* 2011 WL 2011483, at *2 (citing *Lahr,* 164 F.R.D. at 200; *Duncan,* 155 F.R.D. at 25; *Tomlin v. Holecek,* 150 F.R.D. 628, 630 (D.Minn.1993)). Finally, even when the "good cause" and "in controversy" requirements of Rule 35(a) are met, it is still within the sound discretion of the trial court as to whether to order an examination. *Kador,* 2010 WL 2133889, at *2 (citation omitted).

Here, Mr. Diaz did not dispute that his physical and mental condition are in controversy or that Defendant Con–Way's proposed independent medical examiners are qualified medical experts in their respective fields. Rather, Mr. Diaz argued that Defendant Con–Way failed to establish "good cause" to order him to submit to an eye examination and neuropsychological examination. Specifically, Mr. Diaz contended that Defendant Con–Way failed to affirmatively show that no other means exist to obtain the information sought.[5]

### 1. Defendant Con–Way's Request for an Eye Examination

■ According to Mr. Diaz, he suffered eye injuries from the vehicle collision with resulting diplopia, pain, and other problems. (*See* Dkt. No. 18, p. 1). To support these allegations, Mr. Diaz designated Dr. Antonio San Martin, an ophthalmologist, as an expert witness. Dr. San Martin conducted an eye examination on August 5, 2010, and ultimately opined that Mr. Diaz's eye injuries were affecting his ability to drive or return to work. (*See* Dkt. No. 18, Ex. A). Dr. San Martin concluded, in part, that "[t]he amount of vertical displacement that the patient is

---

**5.** The vast majority of Mr. Diaz's remaining arguments directly addressed the timeliness of Defendant Con–Way's motions to compel, which has already been addressed by the Court.

experiencing is more than I would anticipate he could adapt to with prism correction." (*Id.*). Dr. San Martin further recommended that Mr. Diaz return for a follow-up examination in six to twelve months. (*Id.*). There is nothing in the record to indicate that a follow-up examination was conducted.

During the deposition of Dr. San Martin on June 9, 2011, Mr. Diaz's attorney stated that Mr. Diaz had begun to drive.[6] In response, Dr. San Martin stated that he thought Mr. Diaz's driving meant Mr. Diaz had improved and may continue to improve over time. (*See* Dkt. No. 18, Ex. B, p. 14). Dr. San Martin later stated, "[Mr. Diaz] may continue to benefit from a prism correction if he does continue to improve." (*Id.*).

According to Defendant, "good cause" exists for Dr. Richard Evans to conduct an independent eye examination because the examination cannot be obtained through other less intrusive means. (*See* Dkt. No. 18, p. 3). Specifically, Defendant argued that "there is no way for Defendant to have obtained an in-person physical examination of Mr. Diaz's eyes, such as his medical providers have been able to do and have also been listed as experts to testify to such." (*Id.*). Dr. Evans created his expert report on August 5, 2011, without conducting an examination of Mr. Diaz. (*See* Dkt. No. 18, Ex. C). If given an opportunity to conduct an independent examination, Dr. Evans would conduct a fully dilated eye exam to "assess any other reasons for visual problems that may be present and to measure any improvement in function since his last eye exam." (*See* Dkt. No. 23, Ex. D).

Importantly, Mr. Diaz seeks both past and future medical expenses in this lawsuit, indicating that his medical treatment for his eye conditions may be ongoing and relevant to Mr. Diaz's overall damage model. In fact, Mr. Diaz's own expert recommended a follow-up examination six to twelve months from August of 2010, which was never conducted. Moreover, Mr. Diaz's ability to drive is a significant changed circumstance consti-

tuting sufficient "good cause" to warrant an independent eye examination by Dr. Evans.

### 2. Defendant Con–Way's Request for a Neuropsychological Examination

█ According to Mr. Diaz, he suffered a traumatic brain injury from the vehicle collision. (*See* Dkt. No. 19, Ex. A). To support these allegations, Mr. Diaz designated Dr. Gilbert Martinez, a clinical neuropsychologist, as an expert witness. Dr. Martinez conducted a neuropsychological examination over a span of three days in July of 2010, and ultimately opined that Mr. Diaz "suffers from cognitive defects, severe depression, and physical disability as a result of [the accident]." (*Id.*). Dr. Martinez further concluded that Mr. Diaz's "recent changes in cognitive, emotional, and behavioral functioning are substantial and will contribute significantly to his overall social, physical, and occupational disability." (*Id.*). Dr. Martinez recommended that "[r]epeat neuropsychological evaluation is also recommended in six to nine months to improve understanding of enduring cognitive changes and provide updated recommendations." (*Id.*). During Dr. Martinez's deposition on July 26, 2011, Defendant Con–Way's counsel asked Dr. Martinez whether he had completed that repeat evaluation. (*See* Dkt. No. 23, Ex. B, p. 2). Dr. Martinez responded, "No, I have not." (*Id.*).

According to Defendant Con–Way, "good cause" exists for Dr. Francisco Perez to conduct an independent neuropsychological examination because the examination cannot be obtained through other less intrusive means. (*See* Dkt. No. 19, p. 3). Specifically, Defendant argued that "there is no way for Defendant to have obtained an in-person mental examination of Mr. Diaz, such as his providers have been able to do, who have also been listed as experts to testify to such." (*Id.*). Dr. Perez created his expert report on December 20, 2010, without conducting an examination of Mr. Diaz. (*See* Dkt. No. 19, Ex. C). In his initial report, Dr. Perez stated that he wanted his report to be considered "as being preliminary." (*Id.*). Dr. Perez

---

**6.** According to Mr. Diaz's attorney, his "client has never denied that he's been driving." (October ber 7, 2011 Motions Hearing).

further requested "the opportunity to personally conduct a detailed neuropsychological assessment of [Mr. Diaz]." (*Id.*). If given an opportunity to conduct an independent examination, and depending on Mr. Diaz's presentation, Dr. Perez would conduct about ten of the twenty-seven tests of an all-inclusive neuropsychological testing protocol. (*See* Dkt. No. 23, Ex. C). According to Dr. Perez, the testing should be accomplished in one eight-hour session. (*Id.*).

Notably, Mr. Diaz seeks both past and future medical expenses in this lawsuit, indicating that his medical treatment for any brain injuries will be ongoing and relevant to Mr. Diaz's overall damage model. In fact, Mr. Diaz's own expert recommended a follow-up examination, which was never conducted. Thus, the Court found that there was sufficient "good cause" to warrant an independent neuropsychological examination by Dr. Perez.

### E. Other Issues

At the hearing held on October 26, 2011, Mr. Diaz submitted the following requests for the Court's consideration with regard to Dr. Perez's examination: (1) that a time limit be set for Dr. Perez's examination of Mr. Diaz; (2) permission to videotape the examination; (3) a list of the exact tests to be conducted; (4) that the examination be conducted in San Antonio; and (5) if Mr. Diaz must re-depose Dr. Perez, assistance in costs, including travel expenses to go to Houston to depose him, the cost of the court reporter, and the cost of the videographer.

First, the Court did set a time limit of eight hours for Dr. Perez's examination of Mr. Diaz. Second, Mr. Diaz is not entitled to videotape the examination without showing that such a request is necessary. *See Rodriguez v. Pictsweet Co.,* 2008 WL 2019460, at *2 (S.D.Tex. May 9, 2008) (holding that a recording device may interfere with a Rule 35 mental examination and the requesting party failed to persuade the court that such a request is necessary). Third, a list of the exact tests to be conducted by Dr. Perez is not required. In his affidavit, Dr. Perez provided a list of twenty-seven possible tests

and indicated that only ten of those tests will need to be administered. (Dkt. No. 23, Ex. C). He further stated that "the appropriate tests will be selected and administered in Spanish." (*Id.*). Thus, Dr. Perez has provided Plaintiff with sufficient notice of the scope of the examination, and requiring Dr. Perez to provide an exact list of tests prior to meeting Mr. Diaz would interfere with his professional judgment and discretion as an examiner.

Fourth, Defendant Con–Way has agreed to conduct the examination in San Antonio. Finally, if Mr. Diaz must re-depose Dr. Perez, he is not entitled to the assistance in costs he requests. The Court notes that Dr. Perez was deposed on October 20, 2011, while Defendant Con–Way's motions to compel Mr. Diaz's physical examinations were pending. Mr. Diaz should have anticipated that an independent neuropsychological examination by Dr. Perez may be compelled in the near future, and that Mr. Diaz may want to depose Dr. Perez *after* the examination. Thus, had Mr. Diaz waited for the Court to issue an Order on the motions to compel, Mr. Diaz could have avoided having to depose Dr. Perez twice. Although Mr. Diaz is not entitled to reimbursement of any of his requested costs, Defendant Con–Way has agreed to incur the cost of the conference room to be used if an additional deposition of Dr. Perez must be scheduled.

### III. CONCLUSION

As such, "Defendant, Con–Way Truckload, Inc.'s, Opposed Motion to Compel Gerardo Diaz to a Medical Examination to be Performed by Dr. Richard Evans" (Dkt. No. 18), "Defendant's Con–Way Truckload, Inc.'s Opposed Motion to Compel Gerardo Diaz to a Neuropsyc[h]ological Medical Examination to be Performed by Dr. Francisco Perez" (Dkt. No. 19), and "Plaintiff Gerardo Diaz' Opposed Motion for Leave to Designate Dr. R. Braden Neiman as an Expert" (Dkt. No. 25) were GRANTED. Moreover, Defendant Con–Way's "Motion for Leave to File Reply in Excess of Page Limits" (Dkt. No. 22) was

DENIED AS MOOT.[7]

---

**7.** Defendant Con–Way filed its motion for leave to file reply in excess of the normal five-page limitation for replies under the local rules. However, there is no such limitation under the local rules.